## ED EVANS V. THE STATE.

No. 17110. Delivered January 16, 1935.
Reported in 78 S. W. (2d) 196.

The opinion states the case.

*Robert P. Brown,* of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is murder; penalty assessed at confinement in the penitentiary for two years.

Joe Burnett was killed. The evidence indicates that his death was brought about by gun-shot wounds. However, there were some wounds which were apparently inflicted by a sharp instrument.

At night, in the two-room house of Lucinda Merchant, there was a gathering attended by a number of negroes who were engaged in gambling, "shooting craps," and drinking whisky,

The evidence is more or less confusing and conflicting. The statement of John Burnett is in substance that the appellant pointed a gun at Joe Burnett, who grabbed the gun (which was in fact a pistol), and it fired. He first grabbed it with one hand. Then a scuffle ensued and he used both hands. When the gun fired Sam Evans exclaimed: "Don't shoot me! Don't shoot me!" Then C. M. Malone (nicknamed "Blue") exclaimed: "Get loose from there," and shot Joe Burnett twice. Appellant and Malone "kept up with Burnett," shooting him as he was falling backwards. On the premises, in addition to those mentioned, were Charlie Robertson, Bessie Hall, Willie Burnett and Dutch Campbell.

From the testimony of James Banks, it appears that he had owned a pistol which on some previous occasion he had loaned to John Burnett. This was several months before the tragedy. The gun had never been returned to Banks.

Appellant testified in his own behalf to the effect that after whisky had been drunk, a fight took place between Sam Evans, "Blue" Malone and Joe Burnett. Appellant knew nothing of the fight until he was called by Sam Evans, his brother. As Lucinda Merchant grabbed the lamp and ran out with it, Malone grabbed Joe Burnett and said: "Come here, this boy is fixing to shoot you." About that time appellant was leaving by the door and saw a flash of a gun in the kitchen. The evidence indicates that the shooting was done in the kitchen. According to the appellant, Lucinda Merchant had handed a pistol to Willie Burnett. Appellant said he was holding Joe Burnett's arm and the gun, and was trying to keep his brother, Sam Evans, from getting shot. He snatched the pistol from Bur-

nett and ran from the house. He did not reload the gun, which was the one that Lucinda Merchant had brought from the kitchen. After leaving the house appellant heard two or more shots fired inside of the house where it was dark.

From the appellant's testimony we quote as follows: "When I had hold of Joe and trying to hold him, he was snapping the gun and it was pointed toward the floor. * * * *Willie Burnett was the one that was doing the shooting and Joe Burnett ran into the fire. Willie Burnett was firing at my brother Sam Evans.* * * * I don't know whether any argument came up between my brother Sam and Joe Burnett."

On cross-examination appellant said that he heard the gun fire four or five times; that after leaving the house he examined the gun which he had snatched from Willie Burnett, and it had one load in it. Malone was holding Joe Burnett around the waist while appellant had hold of the gun. According to his testimony, appellant was holding the gun with one hand and holding Joe Burnett with the other hand. Appellant claims that he saw no knife during the fight.

In Bill of Exception No. 1, appellant complains of the argument of the State's attorney in which he said: "The defense has argued in this case that the defendant has not been shown by the evidence to be a principal. Why, there is no question as to his being a principal. The court has charged that in his main charge; and if he wasn't a principal, then the court would not have charged on principals in his main charge, as he has done."

The bill is qualified and we do not regard it as presenting any error that would warrant a reversal.

In Bill of Exception No. 2, it is claimed that the district attorney, in his closing argument to the jury, made the following statement: "I went to the city jail on Sunday morning after the killing on Saturday night and gave the defendant an opportunity to tell me who did the shooting. I can't tell you what he told me; I am not allowed to do that, but you can guess what he told me."

Appellant's counsel objected to the argument upon the ground that it was a statement of the district attorney not within the scope of legitimate argument and was prejudicial to the accused. He requested the trial judge to instruct the jury to disregard the statement of the prosecuting attorney. This request was refused and appellant reserved an exception to the refusal. It is further stated in the bill that the district attorney was a man of influence, that he had not been called upon

to testify in the case, and that his remarks were not in response to any argument of counsel for the appellant. The court approved the bill with the following statement: "Counsel for the defendant had argued to the jury or stated to the jury in his argument that the defendant had never been given an opportunity to tell his side of the story, and the statement of the district attorney was in reply to such argument."

State's counsel was privileged, on the principle of invited argument, to make an appropriate reply to the remarks of counsel for the appellant. See Garcia v. State, 70 S. W. (2d) 996. Apparently the district attorney might, with propriety, have responded to the remarks of counsel for the appellant with the declaration that appellant had in fact been given an opportunity to make a statement. However, the language used by him reached further. He was not a witness and he was not sworn; yet his remarks carried to the jury information in the nature of testimony calculated to impress the jury with the idea that the appellant had in a statement to the district attorney admitted his guilt. Taking into account the conflicting and somewhat confusing nature of the testimony given by the witnesses upon the trial of the case, we are constrained to regard the remarks mentioned as improper and probably harmful to the accused.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*