# MARCH 15, 1944

## SHIRLEY HOWARD V. THE STATE.

No. 22744. Delivered March 15, 1944.

The opinion states the case.

*Klapproth & Hamilton,* of Midland, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Appellant was convicted of the murder of J. A. Whittenton and his punishment was assessed at 45 years in the penitentiary.

The killing occurred on November 8, 1942. Deceased was 57 years old, appellant 31. Appellant and his wife had lived in the garage apartment of deceased from December, 1941, to March 15, 1942. Appellant was an employee of an ice company in Midland delivering ice.

On the day of the killing deceased and his wife were in their car going towards their home when appellant drove up behind them, bumping into their car twice with his delivery truck. They drove to the ice plant to report appellant's conduct. Shortly after they reached the plant appellant drove up, got out of his truck with a .22 rifle which he presented at deceased, saying he was going to kill deceased. Mr. Jackson got between them. He endeavored to dissuade appellant, and deceased was begging appellant not to kill him (deceased). Appellant told Jackson if he did not get out of the way he (appellant) would shoot Jackson, whereupon Jackson stepped aside and appellant shot deceased, killing him almost instantly.

Appellant's sole defense was that he was insane at the time of the killing. He testified that during the time he and his wife lived in the apartment near deceased appellant became suspicious that improper relations existed between his wife and deceased, which was the reason for moving to another part of town; that from things he observed he was suspicious that deceased was visiting appellant's wife at their new home, but that she denied it until appellant saw deceased leaving appellant's house, and when he advised his wife of what he had seen she admitted the improper relations with deceased, stating that they had begun when they lived in deceased's apartment. Appellant took their baby and went to his father's and mother's home some miles in the country, but in a few days returned for his wife and also took her there. About August 1 he commenced looking for a house in Midland so they could move back on account of his work there. His wife begged him not to take her back there because she said deceased would not let her alone. On August 7, while he was still trying to find a house in Midland his wife committed suicide. Appellant attributed his wife's suicide to deceased's conduct towards her. While the killing of deceased did not occur until three months after the suicide of appellant's wife he claimed that he never saw deceased during these three months except at a distance. On the other hand, Mrs. Whittenton testi-

fied that during said three months when she would be with deceased they saw appellant frequently and would wave at him and he would wave at them; that there was nothing to indicate that there was any ill feeling between appellant and deceased.

A number of objections to the court's instructions to the jury were presented. They are very general in character. It is doubtful if they comply with the requirement of Art. 658 C. C. P. that the objections to the charge "distinctly specify each ground of objection." The charge has been examined. It appears not vulnerable to the general objections urged.

The bills of exception appear to present no error, save the one now to be considered.

Appellant attributed all of his troubles and the death of his wife to the conduct of deceased. There is no evidence in the record which suggests any other motive for the killing than as indicated.

Bill of exception number 9 reflects that appellant had testified on direct examination that he loved his wife better than any other man ever had loved his wife, and that he mourned her death. On cross examination the district attorney, without objection from appellant, inquired of appellant whether or not it was true that within a few days after the death of his wife he was in Mexican town in Midland, Texas, dancing with a Mexican girl. Appellant vehemently denied that such was the case. The State offered no evidence in regard to the incident inquired about. In his argument to the jury the attorney for appellant, commenting upon the fact that the district attorney had asked the above mentioned question of appellant, and particularly criticizing the district attorney, used the following language: "If the district attorney had any witnesses to impeach this testimony of the defendant, he would have produced them. It was most unfair of him to ask such questions, thereby insinuating that the defendant was in Mexican town dancing with a Mexican girl within a few days after the death of his wife when no witness would testify to that fact, and the district attorney knew it. I am surprised that Mr. McDonald would do this."

In his closing argument to the jury the district attorney made the following statement: "Gentlemen of the Jury: Mr. Hamilton severely criticized me in his argument for asking the defendant Shirley Howard if he was at a dance in Mexican town and dancing with a Mexican girl a few days after the death of his wife,

which question Shirley Howard denied and then, failing to place any witnesses on the stand to impeach this testimony of the defendant. The reason we did not place any witness on the stand was because of the fact that there was some doubt in my mind as to the admissibility of such testimony, but I here now make the proposition to Mr. Hamilton that I have the witnesses here and, if he will waive any objections he has to the introduction of their testimony, I will now reopen the case and introduce this evidence."

Appellant objected to this statement of the district attorney and asked the court to declare a mistrial. The court declined to declare a mistrial, but did instruct the jury not to consider the argument of the district attorney for any purpose whatever. Notwithstanding this instruction appellant still excepted on the ground that the court's instruction did not cure the error. The bill of exception was prepared by the court in lieu of one on the the same subject prepared by appellant's counsel which was refused by the court, and in the court's bill it is recited as follows: "For the purposes of the bill the testimony which the district attorney referred to that he could produce by witnesses was that the defendant, five days after the death of his wife, was down in Mexican town dancing with a Mexican girl. For the purpose of the record it is shown the defendant was an American of white Caucasian race and that the jury was composed of Americans of the white Caucasian race."

If the district attorney was of opinion that evidence contradicting appellant on the point in question was inadmissible he is certainly to be commended for not offering it, but his very forbearance furnished the basis for the troublesome question presented in the bill. If, during the trial, he had offered witnesses to show that appellant was dancing with Mexican girls a few nights after his wife's death and the evidence had been excluded upon objection from appellant the predicate for the argument of counsel for appellant would have been destroyed. Likewise, when the argument of appellant's counsel was made if the district attorney had then requested the court in view of such argument to permit the State to reopen the case and offer evidence upon the point, and the court had declined to do so over objection from appellant's counsel the effect of the argument of appellant's counsel would have been greatly minimized. The State laid itself open to criticism for not calling witnesses upon the point in question, and then the district attorney placed the burden on appellant's attorney to waive objections to the proposed State's evidence. The effect of the district attorney's

statement was to tell the jury what he could prove if no objection were made. Talley v. State, 48 Tex. Cr. R. 474, 88 S. W. 339; Ballard v. State, 97 Tex. Cr. R. 455, 262 S. W. 85; Sharp v. State, 102 Tex. Cr. R. 305, 277 S. W. 1085; Passaloque v. State, 104 Tex. Cr. R. 556, 286 S. W. 239. The case of Evans v. State, 127 Tex. Cr. R. 539, 78 S. W. (2d) 196 furnishes something of a parallel to what occurred in the present case. The argument of appellant's counsel was a rather severe criticism of the district attorney and naturally provoked some reply, but we fear the district attorney went too far in the matter. If the State's evidence was inadmissible appellant's counsel was within his rights to object and could not well be called upon to waive it. The bill as prepared by the court clearly reflects that the district attorney conveyed to the court information that the State could produce witnesses who would testify that appellant was dancing with girls five days after his wife's death. Doubtless it conveyed the same information to the jury. We are in no position to say that this was not injurious to appellant, notwithstanding the court's instruction for the jury to disregard the district attorney's statement. Appellant claimed to be deeply grieved and mentally upset over the death of his wife and attributed all of his trouble to deceased. If the jury believed that within five days after his wife's death appellant was attending places of amusement and dancing with other women it would naturally follow, it seems, that such conduct would be inconsistent with appellant's avowed state of mind, and place him in a bad light before the jury.

Many cases are found in the books upon the question we have been discussing. It is difficult to reconcile some of them. Each one appears largely to rest upon the particular facts of the individual case. We have concluded that in the present instance the incident complained of presents reversible error.

In an amended motion for new trial appellant set up newly discovered evidence from Dr. W. E. Ryan, a Major in the United States Armed Forces. The overruling of the motion on this ground is complained of in bill of exception number ten. Having reached the conclusion that the judgment must be reversed for the error presented by bill of exception number nine we do not discuss the question of newly discovered evidence as this will not arise upon another trial.

For the error pointed out the judgment is reversed and the cause remanded.