**Harlan G. SMITH, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 38553.**

Court of Criminal Appeals of Texas.

Nov. 17, 1965.

Rehearing Denied Jan. 5, 1966.

Orville A. Harlan, Jack W. Knight, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, James C. Brough and Thomas C. Dunn, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is for murder; the punishment, life imprisonment.

The state's evidence shows that the deceased and her seventeen-year-old son lived in a duplex at 714 East 8½ Street in the city of Houston. The appellant and his family occupied the other side of the duplex at No. 716.

On the night of the killing, the deceased and a companion, Alfred Schade, left her apartment and went to a lounge where they drank some beer. When they returned to the apartment around 1:45 a. m., they observed some paint on the wall next to the door. The deceased went to appellant's apartment, knocked on the door, and asked appellant if he knew anything about the paint. Appellant replied by cursing and calling her vile names. The deceased then went to a pay station and called the police. In some twenty minutes, Officers Frank and Davis came and talked to the deceased and her companion on the porch. At the conclusion of their conversation the officers left in their patrol car, the witness Schade walked to his car to leave, and the deceased went inside her apartment.

Schade testified that before he got in his car he heard the deceased holler that she was going with him. He waited at the car and then saw the deceased on the porch and appellant standing by her with a gun. As the deceased was walking toward the steps, appellant fired the gun and the deceased fell. Schade then started to get in his car to leave and appellant shot at him. Some of the pellets entered his body. It was further shown that Officers Frank and Davis, who had just left, heard the report from a block and half away and returned to the scene. They proceeded to appellant's apartment, where he was standing in the living room. When Officer Davis asked him where the gun was, appellant pointed toward a couch. A .410-gauge single barrel shotgun was recovered from the couch. At such time, the gun contained one expended shell in the chamber and the barrel was warm. Appellant was then taken outside by the officers and as they passed the deceased's body appellant said "you bitch, you whore," and then called to his wife "to get Percy Foreman, that he was the only one that could help."

An autopsy performed upon the deceased showed that the cause of death was a shotgun wound in the neck, with a severance of the spinal cord.

Testifying as a witness in his own behalf, appellant related that on the night in question he was at home watching television in the living room; that the deceased came to the door and asked why he threw paint on her door, to which question he replied that he knew nothing about it. Later, the deceased's companion, Schade, came to his apartment and entered the living room, saying "you s. o. b., I will fix you." Schade then hit appellant between the eyes, breaking his glasses. Appellant related that he then got the .410-gauge shotgun and Schade retreated to the door and out on the porch. Appellant followed, and after they were on the porch Schade grabbed the gun. It went off and the deceased fell. Appellant stated that he fired the second shot in the general direction of Schade's automobile as a warning shot. He further swore that it was Schade who pulled the trigger which fired the shot that killed the deceased and that he (appellant) did not kill her. He further denied cursing the deceased after the shooting as he passed by her body and denied that he told his wife to call Percy Foreman. He also denied having previously cursed the deceased, as testified to by her son.

The court in his charge fully instructed the jury on the law of self-defense and of accident and, in applying the law to the

facts, told the jury to acquit the appellant if they believed that he accidentally shot and killed the deceased while defending himself against an unlawful attack by the said Alfred Schade.

■ By their verdict, the jury rejected appellant's defenses and we find the evidence sufficient to sustain the judgment of conviction.

■ By formal bill of exception #1, appellant insists that the court erred in overruling his " 'Plea To The Venire' " and forcing him to select a jury from a panel of jurors summoned for the week, under the provisions of Art. 2101, Vernon's Ann.Texas Civil Statutes. It is appellant's contention that this was error because of the provision in Art. 2101, supra, which reads: "The 'Interchangeable Jury Law' shall not apply to a selection of jurors in lunacy cases or in capital cases."

The bill of exception was refused by the trial judge, with his reasons stated thereon. Appellant agreed to the reasons assigned by the trial judge for refusing the bill, which reasons were as follows: (1) that Harris County comes within and operates under the provisions of Article 601–A of the Vernon's Ann.Code of Criminal Procedure and that more than one hundred jurors were summoned and present for jury service as jurors for the week the case was tried; (2) appellant did not request a special venire; and (3) no objection or complaint was made to Judge E. B. Duggan, who was the judge who organized and empaneled the general criminal panel for the week.

We are unable to agree that because of the provision in Art. 2101, supra, that the "Interchangeable Jury Law" shall not apply to the selection of jurors in capital cases the jury in the present case was selected contrary to law and was disqualified.

Subsequent to the passage of Art. 2101, supra, in 1917, Art. 601–A, V.A.C.C.P., was enacted in 1937 by the legislature, providing that in certain counties operating under the jury wheel law where more than one hundred jurors were summoned for regular jury service for the week, the judge could, at his discretion, refuse to grant a motion for special venire in a capital case and require the case to be tried by the regular jurors summoned for the week.

In 1957, the statute was amended by the enactment of Art. 601–A, V.A.C.C.P., which provides that in all counties operating under the jury wheel law where as many as one hundred jurors have been summoned for the week in which a capital case has been set for trial, the judge shall grant or refuse a motion for special venire and, upon refusal, require the case to be tried by regular jurors summoned for regular jury service for the week.

These statutes are clearly applicable to counties, such as Harris, operating under the jury wheel law and provide that a capital case may, at the judge's discretion, be tried by a jury selected from the regular jurors summoned for the week. Johnson v. State, 167 Tex.Cr.R. 289, 319 S.W.2d 720.

■ Complaint is made to the court's action in permitting Officer Davis to testify, when called as a witness in rebuttal, that as he took appellant past the corpse of the deceased in the yard "he called to his wife to get Percy Foreman, that he was the only one that could help," over appellant's objection that he was under arrest; that no predicate had been laid to show that he was given any legal warning; that such alleged statement was not res gestae and was made without legal counsel, in deprivation of his rights under the Sixth and Fourteenth Amendments to the Constitution of the United States.

The record reflects that such statement was made by appellant within five minutes after the shooting. Under such record the statement of appellant was properly

admitted as res gestae, even though made while under arrest and subject to the construction of a confession of guilt. Dowling v. State, 167 Tex.Cr.R. 43, 317 S.W.2d 533; Heath v. State, Tex.Cr.App., 375 S.W.2d 909. We perceive no error or violation of appellant's constitutional rights.

█ In this connection, complaint is made to a statement made by assistant district attorney Tom Dunn in his closing argument to the jury when he said:

"It doesn't matter to me what Mr. Knight thought about Percy Foreman. We are merely going to show you his state of mind. Who in this community has the reputation of getting people off? Why certainly, Percy Foreman."

The record reflects that appellant moved for a mistrial on the ground that counsel was giving unsworn prejudicial testimony.

Mr. Dunn then said:

"I will withdraw it, Your Honor. I offered it on general knowledge."

Thereupon, appellant's counsel again moved for a mistrial, which the court overruled. Counsel then requested the court to instruct the jury to disregard the statement, and the court so instructed. While this argument should not have been made, it was not so obviously prejudicial that its harmful effect, if any, upon the jury could not be removed by the action of state's counsel in withdrawing it and the court's instruction not to consider it. The refusal to grant a mistrial does not present reversible error.

█ Complaint is also made to another portion of the closing argument of assistant district attorney Dunn, when he said:

"Now, the police are there talking on the porch in normal tones and this defendant is just a few feet away and he knew—even though he told the biggest fib in the world—he said he didn't know what the police were doing there.

He says he wasn't curious. He didn't hear anything they said. Do you believe that? Then if you believe that, then believe the rest of his testimony because it is purely incredible, purely ridiculous, purely hog wash. He heard every word but he denies it because the only way we could have gotten into evidence what Oralie Uilkie [the deceased] said would be if he heard it. You see, on the law of evidence hearsay is not admissible. Oralie Uilkie could have talked to everybody out there and told this man about this—told them about this man as a neighbor but that is not admissible. He is not going to let any testimony in there along that line. Counsel has it there and he has continuously read the offense reports of the Police Department. If Counsel does not object, I am perfectly willing for the jury to take the offense report into the jury room with them and read it so they will have the full benefit of it."

Thereupon, counsel for appellant objected and moved for a mistrial on the ground that state's counsel was challenging appellant to "take an extraneous, hearsay, argumentative, incompetent document and put it before this jury." Such objection was by the court overruled.

Appellant then requested the court to instruct the jury to disregard the state's challenge to the defense to put the document in evidence. In response thereto, the court so instructed.

Appellant insists that the challenge made by state's counsel was so prejudicial that it could not be cured by the court's instruction to disregard the same.

With such contention we do not agree.

The record reflects that, early in the trial, appellant's counsel (Mr. Knight) was furnished a copy of the offense report.

During his cross-examination of the officers, counsel referred to the report and,

in his cross-examination of Officer Frank, he referred to the fact that certain matters testified to by him were not in the report.

In his argument to the jury, counsel referred to the fact that the officers did not put in the report that appellant said "you bitch, you whore," when he passed the deceased's body.

The jury was well aware of the existence of the offense report by virtue of counsel's use of same in cross-examination and in his jury argument.

It is apparent that the offer of state's counsel was in response to the actions of appellant's counsel during the trial. Under such facts he was warranted in making the offer. Renfro v. State, 156 Tex.Cr.R. 400, 242 S.W.2d 772.

Howard v. State, 147 Tex.Cr.R. 88, 178 S.W.2d 691, is not here controlling, because in that case the offer to call a witness was tantamount to the prosecutor saying that the witness would affirm a certain fact, while in the case at bar state's counsel did not state what was in the offense report but merely offered that the jury have it to read.

The judgment is affirmed.

Opinion approved by the court.