Rudy Ramos ESQUIVEL, Appellant,

v.

The STATE of Texas, Appellee.

No. 62779.

Court of Criminal Appeals of Texas,
En Banc.

Jan. 9, 1980.

Donald W. Rogers, Jr., court appointed on appeal, Houston, for appellant.

Carol S. Vance, Dist. Atty., Michael C. Kuhn, James A. Moseley and Edward A. Dodd, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from conviction for capital murder. V.T.C.A. Penal Code, Sec. 19.-03(a)(1). Punishment was assessed at death.

On June 8, 1978 Officers Timothy Hearn and Murry Jordan of the Houston Police Department Narcotics Division received information that appellant possessed heroin. After conducting surveillance the officers approached appellant and several companions. Jordan attempted to search appellant. Appellant pulled a pistol and shot Jordan. Appellant then shot Hearn knowing at the time he was a police officer. Officer Hearn died as a result of the gunshot wounds and

his death forms the basis of this prosecution. Appellant testified that he shot Hearn in self-defense.

■ In his first ground of error, appellant contends that the trial court erred in not granting his motion for continuance. Art. 29.03, V.A.C.C.P. provides that a criminal action may be continued upon motion of the State or the defendant for sufficient cause shown. A trial court's overruling of a motion for continuance must amount to an abuse of discretion in order to constitute reversible error. *Nelson v. State*, Tex.Cr.App., 505 S.W.2d 271. Trial on the merits began on August 14, 1978.

The record reflects that a hearing was held on appellant's motion. He produced witnesses who represented the major television stations and newspapers throughout Harris County. Their testimony shows that the factual details surrounding the shooting were thoroughly reported by the media the day of the shooting and the day after. Several newspaper articles noted appellant's prior criminal record and stated that he was on bond for possession of heroin at the time of the shooting. A news short included film footage from a 1953 trial in which appellant was prosecuted for rape. The week before trial a Tim Hearn Memorial Softball Game was given radio and t. v. coverage but no information regarding the appellant was disseminated in these broadcasts.

■ Appellant produced no witnesses to testify that he could not receive a fair trial. No motion for change of venue was filed. Upon cross-examination a number of appellant's witnesses testified that they knew of no reason why appellant could not receive a fair trial in Harris County. An examination of the exhibits introduced at the hearing on appellant's motion and the testimony of the witnesses indicates that all the information contained therein was factual and informative. *Adami v. State*, Tex.Cr.App., 524 S.W.2d 693; *Morris v. State*, Tex.Cr.App., 488 S.W.2d 768; *Taylor v. State*, Tex.Cr.App., 420 S.W.2d 601. We find that the evidence supports the trial court's implied finding that appellant would not be deprived of a fair and impartial trial as the result of any prejudice in the public mind caused by pretrial publicity. *Demouchette v. State*, Tex.Cr.App., 591 S.W.2d 488; *Bell v. State*, Tex.Cr.App., 582 S.W.2d 800, 810. No abuse of discretion is shown in overruling appellant's motion for continuance.

In his second ground of error, appellant contends that the trial court erred in denying his motion for a special venire. He maintains that "the Court in this case was without authority to refuse appellant's request for a special venire because Harris County, Texas, does not summon prospective jurors for the week, but rather on a daily basis."

Art. 34.01, V.A.C.C.P. provides:

"A 'special venire' is a writ issued in a capital case by order of the district court, commanding the sheriff to summon either verbally or by mail such a number of persons, not less than 50, as the court may order, to appear before the court on a day named in the writ from whom the jury for the trial of such case is to be selected. *Where as many as one hundred jurors have been summoned in such county for regular service for the week* in which such capital case is set for trial, the judge of the court having jurisdiction of a capital case in which a motion for a special venire has been made, *shall grant or refuse such motion* for a special venire, and *upon such refusal require the case to be tried by regular jurors summoned for service in such county for the week* in which such capital case is set for trial and such additional talesmen as may be summoned by the sheriff upon order of the court as provided in Article 34.02 of this Code, but the clerk of such court shall furnish the defendant or his counsel a list of the persons summoned as provided in Article 34.04." (Emphasis added.)

■ It can be seen from the text of the statute that where as many as one hundred prospective jurors have been summoned for the week in which the capital case is set for trial, and where a request for a special venire is made, the trial court shall either

grant or refuse the motion. Upon refusal, the court shall require the case to be tried by the regular jurors summoned for the week. The power of the trial judge to order a special venire or not in cases where at least one hundred prospective jurors have been summoned for the week has been held to be a matter within his discretion. *Smith v. State*, Tex.Cr.App., 397 S.W.2d 70; *Johnson v. State*, 167 Tex.Cr.R. 289, 319 S.W.2d 720.

It is appellant's position that it is the procedure in Harris County to summon panels of prospective jurors on a daily basis. He argues that Art. 34.01 gives the trial court discretion to refuse a special venire request only where at least one hundred jurors have been summoned for "the week." Therefore, he continues, the trial court lacked authority to refuse his request because it did not summon the panel for the week.

The record shows that Harris County does summon prospective jurors to appear on a daily basis. The jury coordinator of the court, Robert W. Clogston, testified that hundreds of jurors are summoned daily in Harris County.

Former Art. 2118 (Tex.Laws 1945, Ch. 229, Sec. 1, at 314) provided for the selection of qualified prospective jurors out of those summoned for the week. That statute provided in part:

> "On Monday, or other day, of each Court week, when a jury has been summoned and there are jury trials, the Court shall select a sufficient number of qualified jurors, in his discretion, to serve as jurors for the week. . . ."

The present statute[1] provides in part:

> "On any day when a jury has been summoned and there are jury trials the court shall select a sufficient number of qualified jurors, in his discretion, to serve as jurors. . . ."

The change in the statutory language of Art. 2118, supra, evidences a realization by our Legislature that in many metropolitan areas with multiple judicial districts, prospective jurors are now summoned and selected on a daily basis. The record in the instant case reflects that many more than one hundred prospective jurors are summoned on a daily basis in Harris County and literally thousands were summoned for the week in which the case was tried. We conclude that the decision of whether to grant a special venire was within the trial court's discretion.

■ Appellant maintains that if the trial court had discretion as to the granting of a special venire, then the court abused that discretion. He contends that providing him with a list of the persons summoned was an inadequate substitute for a special venire. Appellant argues that due to the great number of prospective jurors summoned daily he could not, without a special venire, intelligently exercise his peremptory challenges.

The record shows that in order to conduct voir dire the prospective jurors were brought into the courtroom in groups of 24 or 25 until a jury was chosen. Thus counsel for both sides were limited to that extent in evaluating the panel with their peremptories in mind. The trial court provided detailed questionnaires drafted jointly by both sides. These forms were filled out by jurors and returned to both parties. The record shows that 72 of these forms were filled out by prospective jurors. Individual members of the panels filled out these forms and the questionnaire was made available to counsel during voir dire of each prospective juror. Some 60 prospective jurors were questioned before a jury was selected. The transcript of the voir dire consists of 1,400 pages.

In the instant case, after denying the request for a special venire, appellant was furnished with a list of the persons summoned as provided in Art. 34.04, V.A.C.C.P.[2]

1. Tex.Rev.Civ.Stat.Ann. Art. 2118 (Supp.1980).

2. That statute provides in pertinent part that in a capital case no defendant shall be brought to

trial until he shall have had at least two days a copy of the names of the persons summoned as veniremen for the week in which his case is set for trial.

This action was in lieu of a special venire and in compliance with Art. 34.01, supra. We conclude that the trial court's action in following the statutory procedure after denying appellant's request for a special venire, did not constitute an abuse of discretion. Appellant's second ground of error is overruled.

■ In his third ground of error, appellant contends that the trial court erred in denying his motion styled "Motion to Determine All Prospective Jurors for Jury Selection." The motion was filed following the denial of appellant's request for a special venire. In the pretrial hearing, appellant's counsel stated the purpose of the motion in the following manner:

"MR. ROGERS: I also have a motion which I'm filing now. It is a Motion to Determine all Prospective Jurors for Jury Selection. We're asking the Court to pick from the jurors summoned from Harris County, a sufficient number to pick the entire panel from which the jury for this case would be selected, for the reasons stated in the motion."

The trial court denied the motion after noting that appellant had been provided with a list of the prospective jurors who would be summoned for the week. In support of his contention that the trial court erred in overruling his motion, appellant relies on Crow v. State, 89 Tex.Cr.R. 149, 230 S.W. 148. In that case, the defendant requested the court to have all the veniremen called and their general excuses heard in order that he might know who among the venire were left to be examined further on voir dire. The record reflected that the trial court adopted the plan, not of having all the jurors sworn and tested primarily, and to render excuses, but called them in four at a time and had the four sworn, excusing those who might have legal excuses, and then required the State and defendant to examine and pass upon those of the four who had not been excused. Although the conviction was reversed on another ground of error, the Court noted "this (procedure) was requiring both the State and

defendant to act somewhat in the dark with reference to the other veniremen, and we do not believe this is the proper practice." Crow v. State, supra at 153.

In the instant case, before the panels were brought into the courtroom, each member was tested as to his or her qualifications to serve and excuses were heard and ruled upon. This preliminary examination took place in the jury assembly room to which all prospective jurors are ordered to report. Once the panel of 24 or 25 prospective jurors arrived in the courtroom they were further questioned by the trial court pursuant to Art. 35.17(2), V.A.C.C.P. Each attorney was then allowed to individually voir dire the remaining panel members.

The record reflects that three separate panels were questioned before a jury was selected to serve in appellant's trial. Seven jurors were selected from the first panel, two jurors were selected from the second panel, and the remaining three jurors were selected from the last panel. By the time the third panel was brought into the courtroom, appellant had not yet used one-third of his peremptory challenges. As noted above, counsel was provided information about each prospective juror through the forms which the panel members filled out prior to individual voir dire.

Under the circumstances of this case, we cannot conclude that the court required appellant to "act somewhat in the dark with reference to the other veniremen." Furthermore, counsel's motion constituted an attempt to have the court empanel the equivalent of a "special venire" from which a jury would ultimately be picked. As we noted above, the trial court did not abuse its discretion in denying appellant's request for a special venire. No error is shown in the trial court's denial of appellant's motion to determine all prospective jurors.

In his fourth ground of error appellant argues that the trial court erred "by denying appellant his right under Art. 35.17(2), V.A.C.C.P. to individual voir dire examination of prospective jurors separate and

apart from the remainder of the entire panel."

Art. 35.17(2), V.A.C.C.P., provides:

"In a capital felony case, the court shall propound to the entire panel of prospective jurors questions concerning the principles, as applicable to the case on trial, of reasonable doubt, burden of proof, return of indictment by grand jury, presumption of innocence, and opinion. Then, on demand of the State or defendant, either is entitled to examine each juror on voir dire individually and apart from the entire panel, and may further question the juror on the principles propounded by the court."

▇▇▇ The record shows that the trial judge questioned the panel of prospective jurors concerning their knowledge of the case prior to allowing voir dire of individuals apart from the group. One of the jurors responded that he had read something in the newspaper. Other jurors then indicated they had heard or read something of the case. The judge then asked the panel if any of them had formed an opinion as to appellant's guilt or innocence. Several of the jurors responded affirmatively. As the judge questioned each juror regarding his opinion, defense counsel said, "Your Honor, I want to take this up with the people as we get to them" to which the judge replied, "No, you can't." [3] Appellant now asserts that this exchange constituted an objection and an adverse ruling. We disagree. Defense counsel's interjection was in the form of a general request that did not contain the grounds upon which he relies on appeal. Failure to object at trial waives error, if any. *Pizzalato v. State*, Tex.Cr.App., 513 S.W.2d 566; see also, *Bodde v. State*, Tex.Cr.App., 568 S.W.2d 344; *Moore v. State*, Tex.Cr.App., 542 S.W.2d 664.

▇▇▇ Even if appellant had properly preserved his contention we hold that the trial court did not deny appellant his right to voir dire the prospective jurors separately. Art. 35.17(2), V.A.C.C.P. provides that the

court propound questions to the prospective jurors concerning legal principles applicable to the case. One of such topics which the statute enumerates is "opinion." In the instant case the court questioned each panel as to their opinion before allowing prospective jurors to be questioned individually by counsel separate from the panel. Some 60 prospective jurors were separately questioned before a jury was selected. We hold that the trial court did not err in questioning the panel as a group concerning their opinion of the case. See, Art. 35.17(2), V.A. C.C.P. No error is shown.

Appellant next contends that the trial court erred in overruling his challenge to the array of prospective jurors on the first panel. The grounds of his challenge are that the court failed to issue attachments for prospective jurors upon request and that prospective jurors were excused by persons not authorized to do so.

The record reflects that the court began questioning the panel of prospective jurors concerning their knowledge of the case. One juror responded that he read something in the newspaper whereupon the court undertook to question him further. Defense counsel raised his challenge to the array at that time. The court told counsel that the challenge would be heard later. The record reflects the following exchange then occurred:

"THE COURT: I'll consider it as being filed.

"MR. ROGERS (defense counsel): Would you show the Court's indicated he will not consider any challenge to the array at this time or any request to attach missing jurors at this time prior to actual jury selection with this first panel of prospective jurors.

"MR. MOSELEY (prosecutor): You're going to allow him to file his motion?

"THE COURT: Yes.

"MR. MOSELEY: It's to be considered as if it were filed.

---

**3.** Prospective jurors were later examined separate and apart from other members of the panel. Appellant's complaint is directed to the

court's action during its examination of the panel.

"MR. ROGERS: I'm requesting the opportunity prior to jury selection to present the challenge, and the Court has indicated it will not be heard at this time. "THE COURT: I'm perfectly willing, counsel, to let you dictate into the record what it is that you want to prove. But I'm not going to hear it. If you want to dictate in the record what you want to prove, you may."

After allowing defense counsel to dictate his challenge into the record the court overruled the motion because it was not timely presented. We need not reach the merits of the motion.

■ Art. 35.06, V.A.C.C.P. provides: "The court shall hear and determine a challenge to the array *before* interrogating those *summoned* as to their qualifications." (Emphasis added.) Art. 35.10, V.A.C.C.P. states that when no challenge to the array has been made, or if made, has been overruled, the court shall proceed to try the qualifications of those present who have been summoned to serve as jurors. Art. 35.12, V.A.C.C.P. defines the mode of testing the qualifications of prospective jurors:

"In testing the qualification of a prospective juror after he has been sworn, he shall be asked by the court, or under its direction:

"1. Except for payment of poll tax or registration, are you a qualified voter in this county and State under the Constitution and Laws of this State?

"2. Have you ever been convicted of theft or any felony?

"3. Are you under indictment or legal accusation for theft or any felony?"

Looking to the record it is clear that defense counsel did not raise his challenge to the array before the court qualified the panel. Art. 35.06, V.A.C.C.P. Rather, he brought the matter to the attention of the trial court after voir dire had begun. It is apparent that the trial court allowed defense counsel to dictate the substance of his challenge into the record by way of bill of exception. The court nevertheless declined to consider the merits of the motion. We conclude that the action of the trial court

was proper. Our Code of Criminal Procedure unambiguously requires a challenge to the array to be made before the panel is qualified. Articles 35.06, 35.10, 35.12, V.A. C.C.P. We hold that failure to raise the challenge before the panel is qualified constitutes a waiver of the opportunity to challenge the array.

■ Even if appellant had timely challenged the array no error is shown for the additional reasons that the form of the challenge was improper and appellant did not demonstrate harm. A challenge to the array must be in writing and it must be supported by affidavit. Art. 35.07, V.A.C. C.P. Appellant's challenge is set forth in writing in the record but it is not sworn to. In order to constitute an "affidavit" an instrument must be sworn to. See V.T.C.A. Penal Code, Sec. 1.07(35); *Dedmon v. State*, Tex.Cr.App., 478 S.W.2d 486; cf. *Pena v. Southern Pacific Transportation Company*, 555 S.W.2d 184 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.). In his formal bill of exception included in the record appellant argues that his affidavit was not sworn to because no clerk was present in the courtroom to have appellant swear to the challenge. An examination of the record shows that no request was made of the court to either provide a clerk to perform such duty or for the court to do so personally. Nor does appellant's formal bill of exception show that such request was made. We cannot conclude that the requirements of Art. 35.07, V.A.C.C.P. were complied with. *Stephenson v. State*, Tex.Cr.App., 494 S.W.2d 900, 905 (see also footnote 5 to that opinion). In addition, appellant failed to demonstrate harm by showing that he was forced to accept an objectionable juror. *Walker v. State*, Tex.Cr.App., 543 S.W.2d 634; *Hurd v. State*, Tex.Cr.App., 513 S.W.2d 936. No error is shown.

In his sixth ground of error appellant incorporates the arguments and authorities contained in ground of error number five and contends that the trial court erred in refusing to hear his challenge to the array. The action of the trial court was not errone-

ous for the same reasons stated in our disposition of the foregoing ground of error. This ground of error is overruled.

In grounds of error twelve through fourteen, appellant contends that the trial court erred in excusing three prospective jurors on its own motion. Appellant did not object at the time the prospective jurors were excused by the court.

The record reflects that in making his general remarks to the panel, the court asked if any of the prospective jurors had heard anything about the charge filed against appellant. Three prospective jurors answered that they had heard about the case through media coverage. Each of these veniremen then stated that as a result of this information, they had formed an opinion as to appellant's guilt or innocence which would influence their verdict. At this point, the trial court sua sponte excused the three prospective jurors.

A trial court should not on its own motion excuse a prospective juror for cause unless he is absolutely disqualified from serving on the jury. See, *Chambers v. State*, Tex.Cr.App., 568 S.W.2d 313; *Valore v. State*, Tex.Cr.App., 545 S.W.2d 477. Under Art. 35.19, V.A.C.C.P., the trial court may on its own motion, excuse a prospective juror for any of the following reasons listed in Art. 35.16, V.A.C.C.P.:

" . . .

"2. That he has been convicted of theft or any felony;

"3. That he is under indictment or other legal accusation for theft or any felony;

"4. That he is insane or has such defect in the organs of feeling or hearing, or such bodily or mental defect or disease as to render him unfit for jury service, or that he is legally blind and either the court or the state in its discretion or the defendant or the prospective juror in his discretion is not satisfied that he is fit for jury service in that particular case;"

In the instant case, the three prospective jurors would have been subject to a challenge for cause under Art. 35.16(a)(9), V.A.C.C.P., when they indicated that as a result of information, they had a conclusion as to the guilt or innocence of appellant which would influence them in finding a verdict. Appellant has not shown how he was harmed by the exclusion of these prospective jurors, nor, has he established that he was tried by a jury to which he had a legitimate objection. See, *Bodde v. State,* supra; *Valore v. State,* supra. Furthermore, appellant's failure to object to the court's action in excusing the prospective jurors preserves nothing for review. See, *Bodde v. State,* supra; *Moore v. State,* supra. Appellant's twelfth through fourteenth grounds of error are overruled.

In his seventh and eighth grounds of error, appellant contends that the trial court abused its discretion when he was not allowed to question prospective jurors with regard to their understanding of the terms "deliberately" and "probability" as contained in Art. 37.071(b)(1)(2), V.A.C.C.P. The trial court ruled that appellant would not be allowed to question prospective jurors with regard to these terms in that they did not have a statutory definition or meaning.

The constitutional rights to counsel and trial by jury carry with them the right of counsel to interrogate members of the jury panel for the purpose of enabling counsel to exercise intelligently his peremptory challenges and, as a general rule, great latitude should be allowed by the trial court for such interrogation. *Trevino v. State,* Tex.Cr.App., 572 S.W.2d 336. Whenever some type of limitation is imposed upon the voir dire examination, reversal will result if such a limitation was an abuse of discretion. *Mathis v. State,* Tex.Cr.App., 576 S.W.2d 835; *Trevino v. State,* supra.

In *Chambers v. State,* supra, we found no abuse of discretion in the trial court's refusal to allow counsel to question a prospective juror on her understanding of the term "deliberately" as used in Art. 37.071(b)(1), supra. Likewise, in *Battie v. State,* Tex.Cr. App., 551 S.W.2d 401, no abuse of discretion was found in the trial court's refusal to allow counsel to interrogate prospective jurors with regard to their understanding of

the term "criminal acts of violence" as used in Art. 37.071(b)(2), supra.

The terms "deliberately" and "probability" do not have statutory definitions, thus, they are to be taken and understood in common language. See, Art. 3.01, V.A.C.C.P. As the Court noted in *Battie v. State*, supra at 405:

"It takes no stretch of the imagination to recognize that voir dire examination could be endless if counsel were allowed to ask each prospective juror questions relative to his understanding of such words and terms as 'reasonable doubt,' 'criminal acts of violence,' and 'sound memory and discretion' which have been found to be 'words simple in themselves' that 'jurors are supposed to know such common meaning.'"

█ We find no abuse of discretion in refusing to allow counsel to interrogate prospective jurors relative to their understanding of the terms "deliberately" and "probability." Appellant's seventh and eighth grounds of error are overruled.

In his fifteenth ground of error, appellant contends that the trial court erred in sustaining the State's challenge for cause to prospective juror Esperanza Gil.

The record reflects that during the questioning by the State of prospective juror Gil, she made the following statements.

". . . (prosecutor)

"We do not have to prove the motive, why he killed the police officer. We may, and we may not. If I were to pull a gun right now and shoot someone in this room, the State would present that type of evidence. That would be sufficient evidence to show that I was guilty of murder. Do you see what I mean? And the State may not be able to prove what the motive was or that the person doing the killing had planned for several months.

"You would not require the State to prove the motive of the defendant in killing the deceased or the premeditation on the defendant's part, would you?

"A. That's not very clear to me.

"Q. As I said, we have to prove those five things. But we don't have to prove the motive. You would not require that the State prove the motive of the defendant in killing the deceased before you would find a defendant guilty, if those other elements were proven to you? Would you?

"A. I don't think so.

"Q. Well, you may be curious about his motive, but if the motive was not proven, could you convict someone of murder?

"A. If it was not proven?

"Q. If there was no evidence at all of any motive, could you convict someone of murder?

"A. No, I don't think so."

In response to questions by appellant's attorney, Gil stated:

"Q. So if the State proved to you—of course, you might consider motive or premeditation as far as what penalty you wanted to inflict on the defendant. Obviously a calculated, planned murder is worse than a simple fight between somebody. But do you feel like if you felt the evidence showed beyond a reasonable doubt in your mind that a person intentionally or knowingly caused someone else's death without excuse, that you could find him guilty of murder?

"A. I think I would, yes."

Finally, the court questioned Gil:

"Q. Do you know what motive means?

"A. A reason?

"Q. That's exactly it. That's exactly what it means. A reason. So, if the State can prove the man did it, they don't have to prove why he did it. They don't have to prove the reason.

"The law doesn't require them to prove the reason. Some people might want a reason. If you be-

lieve that they should have a reason and you couldn't find him guilty unless they had a reason, then you are entitled to that belief. Now, that's the question. Are you going to require the State to prove a reason or a motive before you could convict?

"A. I think so.

"Q. You will?

"A. Yes."

In *Chambers v. State*, supra, the Court considered a contention concerning the sustaining of a challenge for cause to a prospective juror. In that case, the venireman indicated that she would require evidence of premeditation to support a conviction for capital murder. In that case, we held:

"Although there was much vacillation on Brightman's (prospective juror) part, it appears that she would probably require some evidence of premeditation and thus could not follow the law. Premeditation is not an element of a murder case. The court's ruling that she was subject to challenge on this basis was sanctioned by Article 35.16(b)(3), supra. No error is shown. Further, the State did not exercise two of its peremptory challenges. One could have been used on this prospective juror as well as with the prospective juror Minicks."

Also see *Bodde v. State*, supra, in which we held that the trial court properly sustained the State's challenge for cause to a prospective juror who indicated that she would hold the State to a higher standard of proof than the statute required.

■ Likewise, in the instant case, we find no error in the trial court's action in sustaining the State's challenge for cause to Gil. Furthermore, the State did not exercise four of its peremptory challenges. One could have been used on this prospective juror. Appellant's fifteenth ground of error is overruled.

In his sixteenth ground of error, appellant contends that the trial court erred in sustaining the State's challenge for cause to prospective juror Anne Guidry. He main-

tains that she was excused in violation of the standards set forth in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Appellant did not object when Guidry was excused following the State's challenge for cause.

The record reflects that during questioning by the court Guidry made the following statements:

"Q. Would you automatically vote against the imposition of capital punishment no matter what the facts might reveal? Would you just automatically vote against it?

"A. I believe I would.

"Q. You don't know for sure?

"A. I would say I would vote against capital punishment.

"Q. Then regardless of the facts, you could never assess death for punishment for any crime?

"A. No, I don't believe I would.

"Q. You're strictly opposed to it?

"A. Yes."

In response to questions from appellant's counsel, Guidry stated:

".     .     .

"Do you feel like you could hear all the evidence and answer yes or no, depending on what the evidence called for, without letting the possible death sentence or life sentence interfere with your deliberations or affect your answer to the questions?

"A. I believe it would interfere with my answering yes to those three questions, because the outcome, as you're stating it, would be—if all the jurors said yes to those, then the death penalty would be given. My saying yes to that, is somewhat saying then that I would go along with the death penalty. Where, in fact I don't."

■ Appellant contends that Guidry's testimony merely shows that she had conscientious scruples against the death penalty. The record does not support the contention. Guidry's testimony makes it clear

that she was opposed to the death penalty and regardless of the facts could not vote to assess death as a punishment.

As this Court noted in *White v. State*, 543 S.W.2d 104:

". . . it was made abundantly clear in *Witherspoon* that the decision reached therein had no bearing on the right of the prosecution to challenge for cause any prospective juror who stated that he would automatically vote against the imposition of capital punishment without regard to the evidence which might be developed at the trial or that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt."

Based upon Guidry's statements, we find that the trial court did not err in sustaining the State's challenge for cause. She was properly excused under the standards set forth in *Witherspoon*. Furthermore, appellant's failure to object at the time Guidry was excused preserves nothing for review. See, *Earvin v. State*, Tex.Cr.App., 582 S.W.2d 794; *Hughes v. State*, Tex.Cr.App., 562 S.W.2d 857. Appellant's sixteenth ground of error is overruled.

In his seventeenth ground of error, appellant contends that the trial court failed to properly apply the standards of *Witherspoon* when the State's challenge for cause was sustained as to prospective juror Max Nelson. Appellant's failure to object at the time Nelson was excused preserves nothing for review. *Earvin v. State*, supra; *Hughes v. State*, supra. Furthermore, any error in excusing Nelson was harmless in view of the fact that the State used only 11 of its 15 peremptory challenges. See, *Chambers v. State*, supra at 321. Appellant's seventeenth ground of error is overruled.

In his tenth ground of error, appellant contends that the trial court erred in overruling his objection to opinion testimony. He maintains that the witness was not properly qualified to express an opinion that appellant would commit criminal acts of violence and constitute a continuing threat to society.

During the punishment phase of the trial, the State called the Honorable Frank Briscoe as a witness. Briscoe stated that he had been a licensed attorney for 28 years. He related that from 1950 to 1954 and 1957 to 1959 he was an Assistant District Attorney in Harris County. From 1960 to 1966, he served as District Attorney for Harris County.

Briscoe stated that he was in charge of the prosecution when appellant was tried and convicted of rape in 1953. He related that based upon his knowledge of appellant's rape conviction and subsequent criminal history, he was of the opinion that appellant would commit future criminal offenses and would continue to constitute a threat to society.

Under Art. 37.071(a), V.A.C.C.P., the trial court at the punishment phase has wide discretion in admitting or excluding evidence which it deems relevant. *Hammett v. State*, Tex.Cr.App., 578 S.W.2d 699; *Hovila v. State*, Tex.Cr.App., 562 S.W.2d 243. However, this discretion extends only to the question of the relevance of the facts sought to be proved and does not alter the rules of evidence insofar as the manner of proof is concerned. *Porter v. State*, Tex.Cr. App., 578 S.W.2d 742.

In *Burns v. State*, Tex.Cr.App., 556 S.W.2d 270 where no psychiatric testimony was presented at the penalty stage (of the capital murder trial) relative to future acts of violence we stated:

"Nevertheless, we find the facts adduced at the guilt stage of the trial in the instant case to furnish greater probative evidence to support the jury's answer than an opinion which may be gleaned by a brief psychiatric examination."

It could be urged with equal logic that a lawyer who had been familiar with a defendant's criminal record for 25 years and had prosecuted him for the crime of rape would be in a better position to predict future conduct than a psychiatrist who based an opinion on a brief visit in a jail cell.

On the other hand, assuming that the witness was not qualified as an expert, in *Denham v. State*, Tex.Cr.App., 574 S.W.2d 129, we noted that lay opinion is admissible on many different subjects:

"In this State, the opinions of lay witnesses, when competent, are admissible concerning sanity, insanity, value, handwriting, intoxication, physical condition—health and disease, estimates of age, size, weight, quantity, time, distance, speed, identity of persons and things. . . ."

We note that unchallenged lay opinion on the probability of future acts of violence has been utilized in other capital cases. *McMahon v. State*, Tex.Cr.App., 582 S.W.2d 786 (defendant's reputation witnesses allowed to give opinion as to probability future violent behavior); *Duffy v. State*, Tex. Cr.App., 567 S.W.2d 197 (defendant's priest testified that he thought the defendant was the type of individual who would continue on a course of violence); *Burns v. State*, supra (District Attorney testified that in his opinion the defendant would commit more acts of criminal violence and constitute a continued threat to society).

▆ We find no error in the trial court allowing the witness to express his opinion with regard to the probability of future acts of violence by appellant. Appellant's objection to the witness' qualifications to predict future acts of violence go to the weight rather than the admissibility of the evidence. Appellant's tenth ground of error is overruled.

In his eleventh ground of error, appellant maintains that the trial court erred in failing to grant an instructed verdict as "to the offense of capital murder insofar as the indictment failed to allege same." He maintains that the indictment failed to allege that the deceased was a peace officer acting in the lawful discharge of his duties at the time he was killed.

The indictment alleges in pertinent part that appellant did:

"intentionally and knowingly cause the death of TIMOTHY L. HEARN, by shooting him with a gun, hereafter styled the Complainant, a peace officer in the

lawful discharge of an official duty, knowing at the time that the Complainant was a peace officer."

▆ Although the phrase "hereafter styled the Complainant" is awkwardly positioned or improperly placed in the indictment, the import of the indictment is clear: that appellant was accused of shooting Timothy L. Hearn, a peace officer in the lawful discharge of an official duty, knowing at the time that Hearn was a police officer. We find that the indictment contained all of the elements of capital murder as proscribed by V.T.C.A. Penal Code, Sec. 19.-03(a)(1). The trial court did not err in failing to grant an instructed verdict as to the offense of capital murder. Appellant's eleventh ground of error is overruled.

In his ninth ground of error, appellant contends that the trial court erred in allowing evidence concerning an out-of-court experiment. He maintains that the evidence was inadmissible due to the fact that the experiment was not made under substantially the same conditions as those which existed when the act to which the experiment related took place. He further argues that the witness was not qualified to perform the test.

Officer W. K. Alsip, of the Houston Police Department, testified that he performed a trace metal detection test on appellant's hands following the offense. He stated that the purpose of the test is to determine whether a person recently held a metal object.

At the time he performed the test, appellant's hands were moist with blood. The results of the test were negative. He stated that in his opinion, the test result was negative due to the fact that appellant's hands were moist at the time the test was performed.

Over objection, Alsip was allowed to testify that he performed a trace metal test on himself after holding the gun which appellant fired at the scene of the offense. Alsip stated that his test results were also negative. He testified that this was due to the fact that the pistol was coated and that the

metal that it was made out of did not show through.

On cross-examination, Alsip testified that he had no knowledge of the chemical reaction which would cause the results of the test to be either positive or negative. He further testified that he did not use the same solution of chemical spray in his test which was used in appellant's test. He did not know if the two cans of spray were made of the same chemicals.

■ Generally, the results of an out-of-court experiment are admissible in the discretion of the trial court if the experiment was made under similar conditions to the event to which the results of the experiment relate. The fact that the experiment was not made under exactly the same condition goes to the weight and not the admissibility of the evidence. See, 23 Tex.Jur.2d, Evidence, Sec. 400 (1961); McCormick and Ray, Texas Evidence, Sec. 1461.5 (Supp. 1978).

■ In the instant case, the experiment was not performed under similar conditions to the testing of appellant's hands at the hospital. The same chemical solution was not shown to have been used in both tests. Furthermore, the reasons for the results in each test were different. We find that the trial court should not have admitted Alsip's testimony concerning the out-of-court experiment.

■ A judgment will not be reversed for the admission of evidence that did not injure the defendant; the question is whether there is a reasonable probability that the evidence complained of might have contributed to the conviction. *Jordan v. State*, Tex.Cr.App., 576 S.W.2d 825; *Myre v. State*, Tex.Cr.App., 545 S.W.2d 820. In the instant case, appellant testified that he

held and fire the gun which killed the deceased. Under the circumstances, we find the error in admitting evidence of the out-of-court experiment was harmless. Appellant's ninth ground of error is overruled.

The judgment is affirmed.

PHILLIPS, J., concurs in result.

CLINTON, Judge, dissenting.

In *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), with respect to special issues 1 and 3 under Article 37.-071(b), V.A.C.C.P., the Supreme Court of the United States observed:

"The Texas Court of Criminal Appeals has not yet construed the first and third questions; thus it is as yet undetermined whether or not the jury's consideration of those questions would properly include consideration of mitigating circumstances. In at least some situations the questions could, however, comprehend such an inquiry. * * * We cannot, however, construe the statute; that power is reserved to the Texas courts." *Id.*, at 272, 96 S.Ct. at 2956, n. 7.

This Court still has not determined expressly and specifically whether in deliberating on its response to the first question the jury may properly include consideration of mitigating circumstances, although there are some general statements to that effect. See *Adams v. State*, 577 S.W.2d 717, 730 (Tex.Cr.App.1979), citing *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App.1975) [1] and *Robinson v. State*, 548 S.W.2d 63 (Tex.Cr.App. 1976).[2] But until the precise holding is made, I only venture the thought that a reasonable concept of "deliberateness" embraces a possibility of mitigating circumstances.

1. In *Jurek* the Court pointed out that to impose the death penalty the jury must respond affirmatively to the submitted questions which, the Court thought, "direct and guide their deliberations" and "channel the jury's consideration on punishment and effectively insure against the arbitrary and wanton imposition of the death penalty." Only generally did the Court observe that taking all discretion from the jury would risk losing that element which "permits individ-

ualization based on consideration of all extenuating circumstances . . ."

2. *Robinson* invokes the idiom, "A good rule of evidence works both ways," to hold that psychological testimony is admissible on behalf of an accused, but applies it in a context of the second question of "future dangerousness," not the first of "deliberately."

Yet, in pattern and form jury charges on punishment in a capital case the jury is not instructed that it may, must or shall consider evidence of mitigating circumstances in responding to the first question.[3] Indeed, the Court held in *King v. State,* 553 S.W.2d 105, 107 (Tex.Cr.App.1977) that "deliberately" need not be defined in the charge for, not being specially defined by law, it is a word deemed simple in itself and used in its ordinary meaning that jurors are supposed to know.[4] So far as can be ascertained we have not developed a standard or measure by which this Court will review an affirmative answer to the first question in order to decide that mitigating circumstances were adequately considered or, for that matter, considered at all by the jury. Thus, while opinions of the Court use phrases like "the jury must consider" all relevant evidence, we have no way of telling that it did the duty it was not told it must perform or for what purpose.

Now what was intimated in *Chambers v. State,* 568 S.W.2d 313, 323 (Tex.Cr.App. 1978)—no abuse of authority in restricting length of voir dire by excluding inquiry into a venireman's understanding of "deliberately"—becomes a definitive holding that an accused is not entitled to question prospective jurors as their definition of the term.

Thus, the juror goes into the box without the accused and his trial counsel having the slightest inkling whether the juror understands and appreciates that "deliberately" as used in the first question means something more than "intentionally" or "knowingly" as will have been found extant from the charge on the court in the offense phase [5]—indeed, without the juror even realizing that in performing his duty during the punishment stage he will be confronted with the problem. During the trial, both at the offense and punishment stages, the uninformed juror naturally is not likely to be alert for evidence of "deliberateness." Unlike the applicable culpable mental state defined in the main charge, "deliberately" need not be, and therefore probably will not be, defined in the charge on punishment. Still guideless in this respect the jurors will deliberate, and perhaps argue, with one another as to the common meaning of the term "deliberately." And, finally, no one outside the jury room will ever be able to determine just what meaning the jury settled on and worked with in answering the first question. A more wanton and freakish method of achieving a responsive answer to a question of life or death may be conjured up, but not many.[6]

In order that a prospective juror may engage in some measure of self analysis and that an accused and his counsel may critically evaluate the prospects, to the end that the jury which is finally selected at least gives hope of being "fair" in a constitutional sense, the seventh ground of error

3. See Texas Criminal Pattern Jury Charges, CPJC 19.03(P), 136 ff.; 8 Texas Practice, Criminal Forms, Willson (Morrison and Blackwell) § 81.13, 161 ff.; cf. McClung, Jury Charges for Texas Criminal Practice 43, para. 3.

4. The *King* court also noted that in *Jurek* the Supreme Court concluded that submitting the three special questions "constitutionally guided" determination of the punishment issues without requiring special definitions of the terms. As already indicated, however, what the Supreme Court pointed out was that this Court had not then determined whether mitigating circumstances were to be included in that determination. On this point *King* brings the matter full circle. Similarly, *Hovila v. State,* 562 S.W.2d 243, 249 (Tex.Cr.App.1978).

5. That the meanings are and were intended to be different is implicit in the opinion of the Court in *Brown v. State,* 554 S.W.2d 677 (Tex.

Cr.App.1977) in disposing of the sixth ground of error.

6. As an aside, I am constrained to remark that decisions such as made by the majority in overruling the seventh ground of error are what often bewilder the practitioner and perplex the thinking layman. Here, in this very case, a venireman may not be asked his understanding of the meaning of "deliberately"—*the* key phrase in one of two or three questions that he must answer as a juror—but may be interrogated at will by counsel for the State and the accused and, yes, by the trial court concerning, and be disqualified by the State for confusedly answering questions as to, "motive"—which all admit is a matter that need not be proved in order to convict.

should be sustained. Because it is not I dissent.

ROBERTS, J., joins.