Michael Albert GOLD, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–84–00239–CR.

Court of Appeals of Texas,
El Paso.

May 1, 1985.

Rehearing Denied May 29, 1985.

Joseph A. Calamia, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso County, El Paso, for appellee.

STEPHEN F. PRESLAR, C.J., and WARD and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an appeal from a conviction for murder. The jury assessed punishment at thirty years imprisonment. We affirm.

Appellant had been married for approximately three years. He had known the victim, Ron Kopp, for nearly twelve years. Kopp supposedly called the Appellant from Michigan on June 6, 1983, advising him that he would be coming to El Paso to handle the sale of a car which he had entrusted to the Appellant. In reality, Kopp was already in El Paso. He had been having an affair with Appellant's wife. He registered at the Airport Holiday Inn and met Appellant's wife there. After talking to Kopp's roommate on the telephone, as well as to a local automobile mechanic friend of Kopp, and after his wife failed to return home from a Tupperware delivery, Appellant became suspicious. He spent nearly two hours checking motels around El Paso. He finally located his wife's car parked next to Kopp's at the Holiday Inn. He ascertained Kopp's room number. He inadvertently knocked on the door of the next room. Witness Robert Silvester testified that after he answered the door, Appellant apologized and stated he had the wrong room. Silvester stated that he heard Appellant knock on Kopp's door ten minutes later. This was followed by people yelling and a woman screaming. He heard a male voice say, "[w]hat are you doing here?" Eight to ten minutes later, he heard two shots, ten to fifteen seconds apart. Looking out the window, he saw the Appellant and his wife drive away.

Silvester called the desk clerk, who in turn called the security guard and the police. Kopp had been shot twice, once just below the collarbone and once through the top of his head. The latter wound was the cause of death. Appellant's wife did not testify at the guilty stage. Appellant testified that he had no indication prior to June 6 of an illicit relationship between his wife and Kopp. His marriage had been troubled but apparently due to finances more than anything else. He and his wife had decided to separate but had not yet done so. Appellant stated that when he knocked on the door several times there was no response. As he turned away, Kopp opened the door. The lights had been out. Appellant entered the room. Angry words were exchanged. Mrs. Gold declined to leave. Appellant went to the vehicle she was driving. Kopp followed him and appeared angry and menacing. Appellant withdrew a two-shot derringer from the vehicle and ordered Kopp to back off. Kopp did so and then asked Appellant to return to the room and discuss the situation. When they entered the room, Appellant slapped his wife and pushed her onto the bed. From behind him, Kopp stated:

> All right, I come down here from Michigan to take Nellie back with me. We've been very intimate and what the fuck are you going to do about it?

Appellant showed him:

> I lost it, I really did. I whirled, like I said, I was facing Nellie, I whirled and the next I know Ron is dead or, at least, I think he was dead.

. . . . .

> I went blank. I blew up inside.

Appellant and his wife drove to her aunt's house. Appellant told the aunt that he had just killed his wife's lover. They called an attorney and then Appellant turned himself in at the police station. The derringer was recovered from the floorboard of the vehicle which had been left at the aunt's house. The jury received instructions on murder and voluntary manslaughter.

Ground of Error No. One alleges insufficient evidence to disprove sudden passion beyond a reasonable doubt. Where, as here, the evidence raises the issue that a defendant may have acted under the immediate influence of sudden passion arising from an adequate cause, the State may not obtain a conviction for murder without disproving the existence of sudden passion beyond a reasonable doubt. *Cobarrubio v. State,* 675 S.W.2d 749 (Tex. Crim.App.1984); *Braudrick v. State,* 572 S.W.2d 709 (Tex.Crim.App.1978).

The *Braudrick* and *Cobarrubio* standards, particularly when applied to a case such as this, pose a difficult problem. Those cases dealt with errors in charging the jury. The settled rule is that a defendant has a right to a lesser offense instruction if such is raised by the evidence, without regard to the source, strength, or credibility of the supporting evidence. Thus the defendant has a right to the instruction due to a purely abstract appraisal of the words presented from the witness stand. On the other hand, the jury is then instructed that they are the exclusive judges of the facts proven and the weight to be given to the testimony. Tex.Code Crim.Pro.Ann. arts. 36.13 and 38.04 (Vernon 1979 and 1981). Each element of the offense must be found beyond a reasonable doubt in order to return a verdict of guilty.

Under *Braudrick* and *Cobarrubio,* if voluntary manslaughter is raised, the absence of sudden passion becomes a negative element of the State's burden with regard to the murder charge. The question in terms of sufficiency of the evidence review is what must the State present in order to prove the negative beyond a reasonable doubt, given the jury's authority to accept or reject testimony in whole or in part. In a pure murder case, if the State fails to prove a positive element of the offense and the defendant takes the stand, simply denying guilt, the jury's rejection of his testimony will not automatically entitle them to find or supply the opposite, the element not proven by the State. In a case such as the present one, however, the elements of murder have

been proven by the State and conceded by the defense. The peculiar relationship between murder and voluntary manslaughter imposes the negative additional burden upon the State by virtue of Appellant's testimony, without regard to credibility. However, if the jury exercises its exclusive discretion by rejecting his sudden passion explanation, this is not a case of the jury supplying a missing affirmative element of the State's murder case. The remaining elements of murder are there by State's proof and Appellant's admission.

The conflict which we perceive is between the deference to jury assessment of credibility which should acknowledge that body's right to reach a murder verdict by rejecting the sudden passion testimony, without further negative proof by the State, and the *Braudrick/Cobarrubio* rule which, in its literal application, requires probative action on the part of the State to disprove sudden passion. The language used in *Braudrick* and *Cobarrubio* has been applied in the context of charging errors. How is it to be applied in appraising the propriety of a jury verdict of murder?

■ Two alternative tests would seem to be possible. The first would be to apply it literally, demanding active disproof of sudden passion by the State to the same degree as any affirmative element of the offense of murder. We reject this approach for two reasons: 1) in cases such as the present, it would place an impossible burden upon the State and 2) it is in conflict with the statutory and common law deference to the jury's assessment of credibility. The jury is in a far better position to appraise a live witness than is an appellate court reading a cold record.

At the other extreme is a complete acceptance of the jury authority to determine credibility, requiring nothing further of the State. *Johnson v. State*, 571 S.W.2d 170, 172 (Tex.Crim.App.1978). *See also: Moore v. State*, 574 S.W.2d 122 (Tex.Crim.App. 1978); *Lafoon v. State*, 543 S.W.2d 617 (Tex.Crim.App.1976); *Hernandez v. State*, 538 S.W.2d 127 (Tex.Crim.App.1976).

■ In *Mason v. State*, 85 Tex.Cr.R. 254, 211 S.W. 593 (1919), the Court of Criminal Appeals stated:

An inspection of the record shows that the testimony of the appellant while on the witness stand raised the issue of whether he acted under the immediate influence of sudden passion. The truth or falsity of such testimony is not for the trial court or this court to pass upon, but is a question for the jury under appropriate instruction. [211 S.W. at 596.]

As we conclude below, the jury in this case was approximately instructed upon the burden of proof as stated in *Braudrick* and *Cobarrubio*. The rule stated in *Mason* should be as true now as in 1919, unless we are to render a jury's verdict totally advisory. Appellant's sudden passion claim which provided an *abstract* basis for jury instruction is nonetheless susceptible of rejection by that body as a *fact*, thereby eliminating voluntary manslaughter as a verdict. This is the standard of review which we endorse in a case such as this. As an intermediate Court, however, we are concerned with the potential conflict with the language in *Braudrick* and *Cobarrubio*. Until that potential is dispelled by the Court of Criminal Appeals, we shall review these cases, each on its own merits, with a view toward recognizing both the State's burden of proof and the jury's inherent power to appraise credibility.

■ In this particular case, we find that the State did produce affirmative evidence which would support the jury's credibility determinations rejecting the sudden passion claim. Appellant contends that he was uncertain of his wife's infidelity prior to the last words spoken by Kopp. Even if true, the suspicion was no doubt well-planted in his mind—hence his search of various motel parking lots in El Paso during the evening of the shooting. The witnesses who encountered him at the Holiday Inn described him as calm and controlled. Certainly, when he located Kopp and his wife in the motel room and she declined to leave with him, his suspicions were confirmed.

At that point, he was neither combative nor argumentative. He had sufficient presence of mind to leave. When Kopp followed him to the vehicle, he drew the weapon from his wife's vehicle, not in sudden passion but in preemptive self-defense. According to his testimony, Kopp had a reputation as a martial arts practitioner and appeared angry and threatening at that moment. Yet he did not fire. With his suspicions of infidelity between his wife and an old friend confirmed, finding them in a motel room together, and then pursued by the friend, an angered martial arts expert, he was under sufficient self-control to refrain from shooting. By the time he returned to the room, the self-defense motivation had dissipated. Kopp was no longer threatening and was in fact seated away from the Appellant when he was shot. Appellant left with his wife and the pistol, driving to her aunt's house. When police recovered the pistol from the vehicle, they found it holstered, not hastily discarded. In summary, although both the objective and subjective elements of sudden passion were strongly presented by the defense, the subjective portion was clearly susceptible to rejection by the jury. Furthermore, there was sufficient evidence of self-control to support the jury's conclusion. Ground of Error No. One is overruled.

The other grounds of error are uniformly without merit. Ground of Error No. Two alleges a *Cobarrubio* problem with the murder application paragraph in the charge. *Cobarrubio v. State*, 675 S.W.2d 749 (Tex.Crim.App. 1984). There was no objection to the charge on that basis. Furthermore, Appellant's own requested instruction did not include disproof of sudden passion in the murder paragraph. In any event, the court's murder application did require the State to disprove beyond a reasonable doubt that Appellant acted in sudden passion and instructed the jury to acquit of murder if they had a reasonable doubt. Ground of Error No. Two is overruled.

Ground of Error No. Three complains of the refusal to include an instruc-tion that the jury could consider all relevant facts and circumstances surrounding the killing and the relationship between the parties in assessing the state of mind of the accused. This Court has previously held Penal Code Section 19.06 to provide a rule of evidence and not an instruction for the jury. While it is not improper to give such an instruction, *Valentine v. State*, 587 S.W.2d 399 (Tex.Crim.App. 1979), it is not necessary. If the rule of evidence is properly applied at trial, evidence admitted and argument thereon permitted, the jury is adequately charged with their general instructions concerning assessment of evidence presented during trial. Ground of Error No. Three is overruled.

Ground of Error No. Four complains of the State's impeachment use of the wife's prior written statement during her testimony at the punishment stage. The statement was read directly to the jury in its entirety. No objection was made at trial. *Esquivel v. State*, 595 S.W.2d 516 (Tex.Crim.App. 1980); *Crocker v. State*, 573 S.W.2d 190 (Tex.Crim.App. 1978). Ground of Error No. Four is overruled.

Ground of Error No. Five complains that three photographs, State's Exhibit Nos. Five, Thirteen and Fourteen, were unduly gruesome and offered solely to inflame the minds of the jury. Exhibit Five shows an entry wound in the victim's right shoulder area. Exhibit Fourteen depicts the corresponding exit wound in the right scapular area. Exhibit Thirteen displays the entry wound in the head. The photographs were displayed to homicide Detective Flynn who analyzed, without objection, the characteristics of the injuries in terms of position of the victim's body when shot and distance from muzzle to point of entry. With regard to the entry and exit wounds of the shot through the shoulder, Flynn detected bruising around the exit. He testified that this was typical of a projectile exiting through tissue which is pressed against another object. Other testimony reflected that a bullet hole was found in the back of a chair in which Kopp was found sitting. Flynn concluded that when Kopp was shot,

his back was still pressed against the chair. With regard to the entry wound in the head, Flynn noted what he termed "pressure tails," tears in the skin surrounding the circular entry wound. He stated that this is caused by the injection of gas pressure from the weapon's discharge, and occurs only when the muzzle is extremely close to the skin. Flynn testified that in this case it was very close to a contact wound.

 The position of the victim and the distance between muzzle and entry wound were clearly relevant to material issues in the case. At the time of Flynn's testimony, it was uncertain which direction the defense would take. Sudden passion was an obvious issue, but self-defense was still a possibility. The evidence presented by Flynn, exemplified in the challenged exhibits, was contrary to a self-defense assertion. It was in fact in conflict with the physical description of the shooting provided by Appellant in asserting his sudden passion explanation. Consequently, the exhibits were of probative value. Gruesome photographs are not automatically excluded and may be introduced if relevant to a material issue. They are excludable if their sole purpose is to inflame the jury. *Martin v. State*, 475 S.W.2d 265 (Tex.Crim. App. 1972). That is not the case here. Ground of Error No. Five is overruled.

Appellant has filed a pro se supplemental brief which presents no meritorious grounds of error.

The judgment is affirmed.