NO. 07-06-0087-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



APRIL 30, 2007


 ______________________________



JAMES EDWARD BROWN, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE


_________________________________



FROM THE 100TH DISTRICT COURT OF COLLINGSWORTH COUNTY;



NO. 2598; HONORABLE DAVID MCCOY, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ. 

MEMORANDUM OPINION


 Appellant James Edward Brown appeals his conviction of manufacture of a
controlled substance-habitual and accompanying sentence of 60 years in the Texas
Department of Criminal Justice Institutional Division. We will affirm.

 Appellant's child tested positive for cocaine at birth. Child Protective Services was
contacted to make arrangements for a safety plan for the child. A CPS investigator,
accompanied by a deputy sheriff, met with appellant and his wife to create a safety plan. 
The investigator testified that appellant indicated during their meeting that "if anyone
attempted to take his child that blood would be shed." The investigator indicated the threat
was taken seriously and a decision was made to pick up the child.

 For about ten days before his arrest, appellant, his wife, and the baby had resided
in a small structure located on appellant's father's property. The structure, which was
referred to as the "sewing room," was detached from the father's residence. The property
also contained other outbuildings, including a "lawn mower shed" and a barn or shop. 

 After an arrest warrant for appellant and an order to take the child were issued, law
enforcement officers set up surveillance around the property. The officers, who included
four Texas Rangers, two Department of Public Safety officers and two local officers,
conducted surveillance for two to three hours before they entered the property and arrested
appellant. 

 During their surveillance, some officers watched the back of the property. During
that time, they saw appellant and no one else. The officers observed appellant walk back
and forth between the sewing room and the barn a couple of times. Three or four times,
they also saw appellant come out of the barn and walk to the area between the lawn
mower shed and a tractor parked next to that shed. From their locations, the officers could
not see appellant after he went between the tractor and the shed. (1) One officer testified that
he noticed appellant once threw something toward a trash pile when he came out from
behind the tractor. The officer believed the item appellant threw was a can. 

 Other officers observed the front of the residence. They also saw appellant leave
the barn and disappear and re-appear several times. They saw only one person come out
of the sewing room, the appellant. 

 After officers arrested appellant near the barn, they secured the main residence and
the sewing room. (2) Some officers detected the smell of ether (3) and traced the smell to the
lawn mower shed. They found, "in plain sight" inside the shed, a metal pot that contained
a plastic fruit drink jug. The jug contained a liquid that was bubbling. One Ranger who had
served in the DPS narcotics service testified: "When I first observed . . . the bottle within
the tub here, it was boiling very rapidly. The second time - a short time later, I should say,
I went back and looked at the tub again, or the bottle that was there, and it had stopped
bubbling or boiling." He described the setup as a methamphetamine laboratory. Another
Ranger, also with previous DPS narcotics service experience, described the jug's contents
as an "active cook." He said the liquid's movement indicated a chemical reaction was
occurring in the jug, and that it appeared to him to be "a methamphetamine production." 
Testimony from a DPS chemist confirmed the liquid contained methamphetamine. 

 A bottle of muriatic acid was located inside the shed, and the record includes
testimony that muriatic acid is a common ingredient used in one method of manufacturing
methamphetamine. One of the officers examined the trash pile where it was believed
appellant had thrown a can and the officer found several starter-fluid cans that had been
punctured. One of the officers testified that starter fluid is a component in the manufacture
of methamphetamine and that it is common to find starter-fluid cans with holes punched
in them around meth labs.

 During the pat-down search of appellant following his arrest, an officer found a
syringe in appellant's front shirt pocket. The officer characterized the syringe as "drug
paraphernalia." Evidence also showed there were also several propane bottles behind the
sewing room, some having fittings that were turquoise in color. One of the officers testified
that anhydrous ammonia will turn brass fittings turquoise and that it is a key ingredient in
the manufacture of methamphetamine. Inside the sewing room, officers found a jewelry
box with a mirrored top that contained another syringe. Officers testified that "meth" is
commonly ingested by use of a syringe. Another officer described the jewelry box as a
"drug kit." 

 Appellant testified in his defense. He testified he was working on a car in the barn
with Cecil Johnson the morning of his arrest. He indicated he had just bought the car, was
cleaning it out and found the needle inside. He testified he was worried about his wife and
baby, and checked on them in the sewing room frequently. He denied entering the
lawnmower shed, going behind the tractor, throwing anything in the trash pile, and
manufacturing methamphetamine. He admitted to his prior convictions for burglary in
Oklahoma and Texas. 

 After the jury convicted appellant of manufacture of a controlled substance, he filed
a motion for new trial alleging two grounds: (1) a material witness was afraid to appear in
court based upon what appeared to be threats or promises by the local law enforcement;
and (2) misconduct by jurors. The trial court did not hold a hearing on the motion for new
trial and the motion was overruled by operation of law. 

 On appeal, appellant raises four issues, contending: (1) the trial court erred in
denying his motion for instructed verdict because the evidence is legally insufficient to
convict; (2) the evidence is factually insufficient to convict; (3) the trial court erred in failing
to hold an evidentiary hearing on his motion for new trial; and (4) the trial court erred in
denying the motion for new trial. 

Issues One and Two - Sufficiency of the Evidence

 When deciding whether evidence is legally sufficient to support a conviction, a
reviewing court must assess all the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could find the essential elements of the crime
beyond a reasonable doubt. Poindexter v. State, 153 S.W.3d 402, 405 (Tex.Crim.App.
2005). The standard is the same in both direct and circumstantial evidence cases. Burden
v. State, 55 S.W.3d 608, 612-13 (Tex.Crim.App. 2001). When conducting a factual
sufficiency review, we review the evidence in a neutral light. Zuniga v. State, 144 S.W.3d
477, 484 (Tex.Crim.App. 2004). However, we must be deferential to the jury's findings and
resist intruding on the fact finder's role as the sole judge of the weight and credibility of the
evidence. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). When considering
factual sufficiency of the evidence, we must address the most important evidence that the
appellant contends undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603
(Tex.Crim.App. 2003).

 A person violates section 481.112 of the Health and Safety Code if he knowingly
manufactures, delivers, or possesses with intent to deliver a controlled substance listed in
Penalty Group 1. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon 2003). 
"Manufacture" is defined as "the production, preparation, propogation, compounding,
conversion, or processing of a controlled substance other than marihuana, directly or
indirectly by extraction from substances of natural origin, independently by means of
chemical synthesis, or by a combination of extraction and chemical synthesis . . . ." Id. at 
§ 481.002(25). Appellant's contention in support of his first issue is not that the evidence
of manufacturing was lacking, but that the evidence failed to show he was involved in that
activity. To obtain a conviction for the manufacture of a controlled substance, the State
must link the defendant either to an interest in the place where the manufacturing was
taking place or to the actual act of manufacturing. See McGlothin v. State, 2006 WL
2773798, *2 (Tex.App.-Fort Worth Sept. 28, 2006, pet. ref'd); Riggs v. State, 2005 WL
2476267, *2 (Tex.App.-Eastland October 6, 2005, pet. ref'd) (both citing East v. State, 722
S.W.2d 170, 172 (Tex.App.-Fort Worth 1986, pet. ref'd). In the present case, the State
successfully linked appellant with the manufacture of methamphetamine.

 A conclusion of guilt can rest on the combined and cumulative force of all
incriminating circumstances. Conner v. State, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001).
While the presence of an accused at the scene of an offense is not alone sufficient to
support a conviction, it is a circumstance tending to prove guilt, which combined with other
facts, may suffice to show that the accused was a participant. Mullins v. State, 173 S.W.3d
167, 174 (Tex.App.-Fort Worth 2005, no pet.) (citing Beardsley v. State, 738 S.W.2d 681,
685 (Tex.Crim.App. 1987)). In this case, appellant was not merely present on the property
during the offense; he had lived there for about ten days prior to his arrest. Although
appellant testified it was not unusual to smell strong odors on the property because of a
nearby dairy farm, the jury could infer appellant's awareness of the chemical process from
testimony describing the strong odor of ether that was present. See McGlothin, 2006 WL
2773798 at *2 (citing East, 722 S.W.2d at 172) (defendant was aware of his surroundings
that contained evidence of methamphetamine manufacturing). Photographs in evidence
confirm that the tractor mentioned in testimony was parked next to the only opening in the
lawn mower shed, and that the metal pot and jug would be readily visible inside the shed
to a person walking to the rear of the tractor. Shortly after appellant's arrest, and following
a period of two to three hours when appellant was the only person observed in the area,
officers found the "active cook" underway. Evidence appellant emerged from that area on
one occasion carrying an item he threw toward the trash pile indicates he engaged in some
activity while out of sight behind the tractor. These circumstances, coupled with testimony
that he repeatedly walked to the location of the manufacturing activity, viewed in the light
most favorable to a guilty verdict, would permit a rational jury to conclude beyond a
reasonable doubt that appellant was not simply aware of the unlawful activity taking place,
but was engaged in it. See Riggs, 2005 WL 2476267 at *2 (stating appellant was clearly
aware of his surroundings that contained evidence of methamphetamine manufacturing
and the strong smell); see also East, 722 S.W.2d at 172 (stating there is a link to
manufacturing when there is "evidence of possession of a drug lab on one's premises
combined with evidence that the lab has been used on the premises to manufacture the
drug alleged, and in circumstances where the presence of the lab, because of its open
location or odor or both, is shown to have been known to the defendant"). We overrule
appellant's first issue on appeal.

 In support of his contention the evidence is factually insufficient, appellant points to
the testimony of his father that others had access to the premises and to the testimony of
his brother's former girlfriend, to the effect that the brother had engaged in
methamphetamine manufacturing. Appellant also emphasizes his own description of his
activities just preceding his arrest and the absence of testimony directly connecting him
with the manufacturing. Viewing all the evidence in a neutral light, we find that the
evidence supporting the jury's verdict is not so weak that the verdict is clearly wrong and
manifestly unjust or that the contrary evidence is so strong that the standard of proof of
beyond a reasonable doubt could not have been met. Russeau v. State, 171 S.W.3d 871,
878 (Tex.Crim.App. 2005). Appellant's second issue is overruled. 

Issues Three and Four - Motion for New Trial

 Appellant's third issue questions the trial court's denial of a hearing on his motion
for new trial. We review the denial of a hearing on a motion for new trial under the abuse
of discretion standard. Wallace v. State, 106 S.W.3d 103, 108 (Tex.Crim.App. 2003);
Reyes v. State, 849 S.W.2d 812, 815 (Tex.Crim.App. 1993). A hearing is not required
when the matters raised in the motion for new trial are subject to being determined from
the record. Reyes, 849 S.W.2d at 816. But a defendant is entitled to a hearing on a
motion for new trial if the motion and accompanying affidavit(s) raise matters not
determinable from the record on which he could be entitled to relief. Wallace, 106 S.W.3d
at 108. The affidavit must specifically show the "truth of the grounds for attack." Martinez
v. State, 74 S.W.3d 19, 21 (Tex.Crim.App. 2002) (citing King v. State, 29 S.W.3d 556, 569
(Tex.Crim.App. 2000)). Appellant's motion for new trial had two attachments. We must
determine whether they show reasonable grounds for relief. Jordan v. State, 883 S.W.2d
664, 665 (Tex.Crim.App. 1994). If appellant's motion and affidavits are sufficient, a hearing
on the motion is mandatory. Id.

 Appellant first attached an affidavit made by his wife in support of his contention of
jury misconduct. Appellant argues on appeal that the affidavit showed he could be entitled
to a new trial under Rule of Appellate Procedure 21.3(f) because it shows jurors talked with
others about the case. Tex. R. App. P. 21.3(f). In her affidavit, appellant's wife states the
following:

 While waiting with [appellant] outside of the courtroom, in Wellington, Collingsworth
County, Texas, I saw some of the Jury members talking to the officer who was in
charge of the jury. They were talking for a number of minutes. When they made
eye contact with me, they had a surprised look on their face. I saw this before the
guilty verdict was made. I also saw three Jury members talking about the "White
Jug" after the break at the beginning of the trial.


The affidavit first contains appellant's wife's statement she saw jury members talking for
a number of minutes with the officer in charge of the jury. By statute, the bailiff is to "attend
the wants of the jury . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.24 (Vernon 2006). The
affidavit contains no information about the topic of the jurors' conversation with the bailiff. 
It therefore does not show that the conversation provided reasonable grounds for relief
under Rule 21.3(f). (4) See Stults v. State, 23 S.W.3d 198, 206-07 (Tex.App.-Houston [14th
Dist.] 2000, pet. ref'd) (defendant's burden to show conversation was "about the case" not
satisfied when evidence did not show what juror and witness were talking about). See also
King, 29 S.W.3d at 569 (assertion in affidavit that jury was fond of bailiff did not establish
improper influence). 

 The affidavit contains also the affiant's statement she saw three jurors talking about
the "White Jug." On its face, the brief statement does not show that appellant's wife was
in a position to know the contents of their conversation, since she merely "saw" the jurors
talking. That alone supports the trial court's decision not to hold a hearing on appellant's
motion. Assuming that appellant's wife meant she heard the jurors discussing the "White
Jug," and assuming further that their discussion concerned the plastic jug admitted in
evidence, the trial court nonetheless reasonably could have concluded the affidavit does
not demonstrate reasonable grounds exist for relief under Rule 21.3(f). Appellant does not
cite, and we have not located, authority applying the phrase "when a juror has talked with
anyone about the case" in Rule 21.3(f) to a conversation among jurors. See, e.g., Quinn
v. State, 958 S.W.2d 395, 401 (Tex.Crim.App. 1997) (referring to conversation between
a juror and an "unauthorized" person). (5)

 The second attachment to appellant's motion for new trial is a statement signed by
Cecil Johnson. (6) The statement indicates Johnson was present on the property that
morning and that police scared him with a threat to put him in jail if he "came back around." 
Appellant contends the statement shows a material defense witness has been kept from
court by threats, supporting his entitlement to a new trial under Rule of Appellate
Procedure 21.3(e). We agree with the State that the trial court was not required to
consider Johnson's statement.

 To constitute an affidavit, an instrument must be sworn to. Esquivel v. State, 595
S.W.2d 516, 523 (Tex.Crim.App. 1980). To be sworn, a statement must unequivocally
represent that its contents are true. In Interest of Simpson, 932 S.W.2d 674, 677
(Tex.App.-Amarillo 1996, no writ ). The signature and stamp of a notary public appears
at the end of Johnson's statement, but the statement contains no jurat. Johnson's
signature appears in a concluding sentence that reads, "I [signature of Cecil Johnson],
swear, this is my testimony to the best of my knowledge, on this date 6th of February (sic)
2006." Johnson's statement does not meet the requirements of an affidavit. See Reyes,
849 S.W.2d at 816 (discussing requirement of affidavit accompanying motion for new trial);
Garcia v. State, 960 S.W.2d 329, 334 (Tex.App.-Corpus Christi 1997, no pet.) (unsworn
assertion insufficient as affidavit). We find the trial court did not abuse its discretion by
failing to hold a hearing on appellant's motion for new trial, and overrule his third issue.

 In his fourth issue, appellant contends the trial judge erred in failing to grant his
motion for new trial. We review the trial court's denial of a motion for new trial under the
abuse of discretion standard. Lewis v. State, 911 S.W.2d 1, 7 (Tex.Crim.App. 1995). We
do not substitute our judgment for that of the trial court, but rather decide whether the trial
court's decision was arbitrary or unreasonable. Id. For the same reasons we have
concluded the court did not abuse its discretion by denying appellant a hearing on his
motion for new trial, we find also the trial court's denial of the motion was not arbitrary or
unreasonable. We overrule appellant's fourth issue on appeal and affirm the judgment of
the trial court. 

 James T. Campbell

 Justice




Do not publish.




 
1. As one officer described it as he testified with the aid of a photograph showing the
tractor and shed, "The Defendant would . . . walk in this area right here and would
disappear between this tractor and this building right here."
2. Testimony indicated no one was found in the main residence, and appellant's wife
and baby were in the sewing room.
3. One officer testified he smelled the ether while inside the sewing room.
4. Indeed, the affidavit does not even show that appellant's wife was in a position to
know the contents of the conversation. See Dugard v. State, 688 S.W.2d 524, 528
(Tex.Crim.App. 1985), overruled on other grounds, Williams v. State, 780 S.W.2d 802, 803
(Tex.Crim.App. 1989) (complaint of jury misconduct requires affidavit of juror or some other
person in position to know the facts, or must state some reason or excuse for failing to
produce affidavit).
5. We note also that nothing about appellant's wife's statement suggests the jurors'
discussion involved an outside influence, as that term has been applied by Texas courts. 
See Ford v. State, 129 S.W.3d 541, 550 (Tex.App.-Dallas 2003, pet. ref'd) (criminal case
citing Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 362, 370 (Tex. 2000) and applying
Texas Supreme Court's analysis that "outside influence" originates from sources other than
jurors). The trial court also could have reasonably concluded, therefore, that Rule of
Evidence 606(b) would prohibit any testimony by the jurors concerning any effect of that
conversation on their deliberations.
6. Cecil Johnson is the man appellant testified was working with him on the car on
the date of the arrest.