NO. 07-06-0087-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

APRIL 30, 2007
_____

JAMES EDWARD BROWN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 100TH DISTRICT COURT OF COLLINGSWORTH COUNTY;

NO. 2598; HONORABLE DAVID MCCOY, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant James Edward Brown appeals his conviction of manufacture of a controlled substance-habitual and accompanying sentence of 60 years in the Texas Department of Criminal Justice Institutional Division.  We will affirm.

Appellant's child tested positive for cocaine at birth. Child Protective Services was contacted to make arrangements for a safety plan for the child.  A CPS investigator, accompanied by a deputy sheriff, met with appellant and his wife to create a safety plan. The investigator testified that appellant indicated during their meeting that "if anyone

attempted to take his child that blood would be shed." The investigator indicated the threat was taken seriously and a decision was made to pick up the child.

For about ten days before his arrest, appellant, his wife, and the baby had resided in a small structure located on appellant's father's property. The structure, which was referred to as the "sewing room," was detached from the father's residence. The property also contained other outbuildings, including a "lawn mower shed" and a barn or shop.

After an arrest warrant for appellant and an order to take the child were issued, law enforcement officers set up surveillance around the property. The officers, who included four Texas Rangers, two Department of Public Safety officers and two local officers, conducted surveillance for two to three hours before they entered the property and arrested appellant.

During their surveillance, some officers watched the back of the property. During that time, they saw appellant and no one else. The officers observed appellant walk back and forth between the sewing room and the barn a couple of times. Three or four times, they also saw appellant come out of the barn and walk to the area between the lawn mower shed and a tractor parked next to that shed. From their locations, the officers could not see appellant after he went between the tractor and the shed.[1] One officer testified that he noticed appellant once threw something toward a trash pile when he came out from behind the tractor. The officer believed the item appellant threw was a can.

---

[1] As one officer described it as he testified with the aid of a photograph showing the tractor and shed, "The Defendant would . . . walk in this area right here and would disappear between this tractor and this building right here."

2

Other officers observed the front of the residence. They also saw appellant leave the barn and disappear and re-appear several times. They saw only one person come out of the sewing room, the appellant.

After officers arrested appellant near the barn, they secured the main residence and the sewing room.[2] Some officers detected the smell of ether[3] and traced the smell to the lawn mower shed. They found, "in plain sight" inside the shed, a metal pot that contained a plastic fruit drink jug. The jug contained a liquid that was bubbling. One Ranger who had served in the DPS narcotics service testified: "When I first observed . . . the bottle within the tub here, it was boiling very rapidly. The second time – a short time later, I should say, I went back and looked at the tub again, or the bottle that was there, and it had stopped bubbling or boiling." He described the setup as a methamphetamine laboratory. Another Ranger, also with previous DPS narcotics service experience, described the jug's contents as an "active cook." He said the liquid's movement indicated a chemical reaction was occurring in the jug, and that it appeared to him to be "a methamphetamine production." Testimony from a DPS chemist confirmed the liquid contained methamphetamine.

A bottle of muriatic acid was located inside the shed, and the record includes testimony that muriatic acid is a common ingredient used in one method of manufacturing methamphetamine. One of the officers examined the trash pile where it was believed appellant had thrown a can and the officer found several starter-fluid cans that had been

_____

[2] Testimony indicated no one was found in the main residence, and appellant's wife and baby were in the sewing room.

[3] One officer testified he smelled the ether while inside the sewing room.

punctured. One of the officers testified that starter fluid is a component in the manufacture of methamphetamine and that it is common to find starter-fluid cans with holes punched in them around meth labs.

During the pat-down search of appellant following his arrest, an officer found a syringe in appellant's front shirt pocket. The officer characterized the syringe as "drug paraphernalia." Evidence also showed there were also several propane bottles behind the sewing room, some having fittings that were turquoise in color. One of the officers testified that anhydrous ammonia will turn brass fittings turquoise and that it is a key ingredient in the manufacture of methamphetamine. Inside the sewing room, officers found a jewelry box with a mirrored top that contained another syringe. Officers testified that "meth" is commonly ingested by use of a syringe. Another officer described the jewelry box as a "drug kit."

Appellant testified in his defense. He testified he was working on a car in the barn with Cecil Johnson the morning of his arrest. He indicated he had just bought the car, was cleaning it out and found the needle inside. He testified he was worried about his wife and baby, and checked on them in the sewing room frequently. He denied entering the lawnmower shed, going behind the tractor, throwing anything in the trash pile, and manufacturing methamphetamine. He admitted to his prior convictions for burglary in Oklahoma and Texas.

After the jury convicted appellant of manufacture of a controlled substance, he filed a motion for new trial alleging two grounds: (1) a material witness was afraid to appear in

4

court based upon what appeared to be threats or promises by the local law enforcement; and (2) misconduct by jurors. The trial court did not hold a hearing on the motion for new trial and the motion was overruled by operation of law.

On appeal, appellant raises four issues, contending: (1) the trial court erred in denying his motion for instructed verdict because the evidence is legally insufficient to convict; (2) the evidence is factually insufficient to convict; (3) the trial court erred in failing to hold an evidentiary hearing on his motion for new trial; and (4) the trial court erred in denying the motion for new trial.

## Issues One and Two - Sufficiency of the Evidence

When deciding whether evidence is legally sufficient to support a conviction, a reviewing court must assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005). The standard is the same in both direct and circumstantial evidence cases. *Burden v. State*, 55 S.W.3d 608, 612-13 (Tex.Crim.App. 2001). When conducting a factual sufficiency review, we review the evidence in a neutral light. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004). However, we must be deferential to the jury's findings and resist intruding on the fact finder's role as the sole judge of the weight and credibility of the evidence. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000). When considering factual sufficiency of the evidence, we must address the most important evidence that the

appellant contends undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

A person violates section 481.112 of the Health and Safety Code if he knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (Vernon 2003). "Manufacture" is defined as "the production, preparation, propogation, compounding, conversion, or processing of a controlled substance other than marihuana, directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis . . . ." Id. at § 481.002(25). Appellant's contention in support of his first issue is not that the evidence of manufacturing was lacking, but that the evidence failed to show he was involved in that activity. To obtain a conviction for the manufacture of a controlled substance, the State must link the defendant either to an interest in the place where the manufacturing was taking place or to the actual act of manufacturing. *See McGlothin v. State*, 2006 WL 2773798, *2 (Tex.App.–Fort Worth Sept. 28, 2006, pet. ref'd); *Riggs v. State*, 2005 WL 2476267, *2 (Tex.App.–Eastland October 6, 2005, pet. ref'd) (both citing *East v. State*, 722 S.W.2d 170, 172 (Tex.App.–Fort Worth 1986, pet. ref'd). In the present case, the State successfully linked appellant with the manufacture of methamphetamine.

A conclusion of guilt can rest on the combined and cumulative force of all incriminating circumstances. *Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001). While the presence of an accused at the scene of an offense is not alone sufficient to

6

support a conviction, it is a circumstance tending to prove guilt, which combined with other facts, may suffice to show that the accused was a participant. *Mullins v. State*, 173 S.W.3d 167, 174 (Tex.App.–Fort Worth 2005, no pet.) (citing *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex.Crim.App. 1987)). In this case, appellant was not merely present on the property during the offense; he had lived there for about ten days prior to his arrest. Although appellant testified it was not unusual to smell strong odors on the property because of a nearby dairy farm, the jury could infer appellant's awareness of the chemical process from testimony describing the strong odor of ether that was present. *See McGlothin*, 2006 WL 2773798 at *2 (citing *East*, 722 S.W.2d at 172) (defendant was aware of his surroundings that contained evidence of methamphetamine manufacturing). Photographs in evidence confirm that the tractor mentioned in testimony was parked next to the only opening in the lawn mower shed, and that the metal pot and jug would be readily visible inside the shed to a person walking to the rear of the tractor. Shortly after appellant's arrest, and following a period of two to three hours when appellant was the only person observed in the area, officers found the "active cook" underway. Evidence appellant emerged from that area on one occasion carrying an item he threw toward the trash pile indicates he engaged in some activity while out of sight behind the tractor. These circumstances, coupled with testimony that he repeatedly walked to the location of the manufacturing activity, viewed in the light most favorable to a guilty verdict, would permit a rational jury to conclude beyond a reasonable doubt that appellant was not simply aware of the unlawful activity taking place, but was engaged in it. *See Riggs*, 2005 WL 2476267 at *2 (stating appellant was clearly aware of his surroundings that contained evidence of methamphetamine manufacturing

7

and the strong smell); *see also East*, 722 S.W.2d at 172 (stating there is a link to manufacturing when there is "evidence of possession of a drug lab on one's premises combined with evidence that the lab has been used on the premises to manufacture the drug alleged, and in circumstances where the presence of the lab, because of its open location or odor or both, is shown to have been known to the defendant"). We overrule appellant's first issue on appeal.

In support of his contention the evidence is factually insufficient, appellant points to the testimony of his father that others had access to the premises and to the testimony of his brother's former girlfriend, to the effect that the brother had engaged in methamphetamine manufacturing. Appellant also emphasizes his own description of his activities just preceding his arrest and the absence of testimony directly connecting him with the manufacturing. Viewing all the evidence in a neutral light, we find that the evidence supporting the jury's verdict is not so weak that the verdict is clearly wrong and manifestly unjust or that the contrary evidence is so strong that the standard of proof of beyond a reasonable doubt could not have been met. *Russeau v. State*, 171 S.W.3d 871, 878 (Tex.Crim.App. 2005). Appellant's second issue is overruled.

Issues Three and Four - Motion for New Trial

Appellant's third issue questions the trial court's denial of a hearing on his motion for new trial. We review the denial of a hearing on a motion for new trial under the abuse of discretion standard. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex.Crim.App. 2003); *Reyes v. State*, 849 S.W.2d 812, 815 (Tex.Crim.App. 1993). A hearing is not required

when the matters raised in the motion for new trial are subject to being determined from the record. *Reyes*, 849 S.W.2d at 816. But a defendant is entitled to a hearing on a motion for new trial if the motion and accompanying affidavit(s) raise matters not determinable from the record on which he could be entitled to relief. *Wallace*, 106 S.W.3d at 108. The affidavit must specifically show the "truth of the grounds for attack." *Martinez v. State*, 74 S.W.3d 19, 21 (Tex.Crim.App. 2002) (citing *King v. State*, 29 S.W.3d 556, 569 (Tex.Crim.App. 2000)). Appellant's motion for new trial had two attachments. We must determine whether they show reasonable grounds for relief. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex.Crim.App. 1994). If appellant's motion and affidavits are sufficient, a hearing on the motion is mandatory. *Id*.

Appellant first attached an affidavit made by his wife in support of his contention of jury misconduct. Appellant argues on appeal that the affidavit showed he could be entitled to a new trial under Rule of Appellate Procedure 21.3(f) because it shows jurors talked with others about the case. Tex. R. App. P. 21.3(f). In her affidavit, appellant's wife states the following:

> While waiting with [appellant] outside of the courtroom, in Wellington, Collingsworth County, Texas, I saw some of the Jury members talking to the officer who was in charge of the jury. They were talking for a number of minutes. When they made eye contact with me, they had a surprised look on their face. I saw this before the guilty verdict was made. I also saw three Jury members talking about the "White Jug" after the break at the beginning of the trial.

The affidavit first contains appellant's wife's statement she saw jury members talking for a number of minutes with the officer in charge of the jury. By statute, the bailiff is to "attend

9

the wants of the jury . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.24 (Vernon 2006). The affidavit contains no information about the topic of the jurors' conversation with the bailiff. It therefore does not show that the conversation provided reasonable grounds for relief under Rule 21.3(f).[4] *See Stults v. State*, 23 S.W.3d 198, 206-07 (Tex.App.–Houston [14th Dist.] 2000, pet. ref'd) (defendant's burden to show conversation was "about the case" not satisfied when evidence did not show what juror and witness were talking about). *See also King*, 29 S.W.3d at 569 (assertion in affidavit that jury was fond of bailiff did not establish improper influence).

The affidavit contains also the affiant's statement she saw three jurors talking about the "White Jug." On its face, the brief statement does not show that appellant's wife was in a position to know the contents of their conversation, since she merely "saw" the jurors talking. That alone supports the trial court's decision not to hold a hearing on appellant's motion. Assuming that appellant's wife meant she heard the jurors discussing the "White Jug," and assuming further that their discussion concerned the plastic jug admitted in evidence, the trial court nonetheless reasonably could have concluded the affidavit does not demonstrate reasonable grounds exist for relief under Rule 21.3(f). Appellant does not cite, and we have not located, authority applying the phrase "when a juror has talked with anyone about the case" in Rule 21.3(f) to a conversation among jurors. *See, e.g., Quinn*

---

[4] Indeed, the affidavit does not even show that appellant's wife was in a position to know the contents of the conversation. *See Dugard v. State*, 688 S.W.2d 524, 528 (Tex.Crim.App. 1985), *overruled on other grounds*, *Williams v. State*, 780 S.W.2d 802, 803 (Tex.Crim.App. 1989) (complaint of jury misconduct requires affidavit of juror or some other person in position to know the facts, or must state some reason or excuse for failing to produce affidavit).

*v. State*, 958 S.W.2d 395, 401 (Tex.Crim.App. 1997) (referring to conversation between a juror and an "unauthorized" person).[5]

The second attachment to appellant's motion for new trial is a statement signed by Cecil Johnson.[6] The statement indicates Johnson was present on the property that morning and that police scared him with a threat to put him in jail if he "came back around." Appellant contends the statement shows a material defense witness has been kept from court by threats, supporting his entitlement to a new trial under Rule of Appellate Procedure 21.3(e). We agree with the State that the trial court was not required to consider Johnson's statement.

To constitute an affidavit, an instrument must be sworn to. *Esquivel v. State*, 595 S.W.2d 516, 523 (Tex.Crim.App. 1980). To be sworn, a statement must unequivocally represent that its contents are true. *In Interest of Simpson*, 932 S.W.2d 674, 677 (Tex.App.–Amarillo 1996, no writ ). The signature and stamp of a notary public appears at the end of Johnson's statement, but the statement contains no jurat. Johnson's signature appears in a concluding sentence that reads, "I [signature of Cecil Johnson],

---

[5] We note also that nothing about appellant's wife's statement suggests the jurors' discussion involved an outside influence, as that term has been applied by Texas courts. *See Ford v. State*, 129 S.W.3d 541, 550 (Tex.App.–Dallas 2003, pet. ref'd) (criminal case citing *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 370 (Tex. 2000) and applying Texas Supreme Court's analysis that "outside influence" originates from sources other than jurors). The trial court also could have reasonably concluded, therefore, that Rule of Evidence 606(b) would prohibit any testimony by the jurors concerning any effect of that conversation on their deliberations.

[6] Cecil Johnson is the man appellant testified was working with him on the car on the date of the arrest.

11

swear, this is my testimony to the best of my knowledge, on this date 6th of February (sic) 2006." Johnson's statement does not meet the requirements of an affidavit. *See Reyes*, 849 S.W.2d at 816 (discussing requirement of affidavit accompanying motion for new trial); *Garcia v. State*, 960 S.W.2d 329, 334 (Tex.App.–Corpus Christi 1997, no pet.) (unsworn assertion insufficient as affidavit). We find the trial court did not abuse its discretion by failing to hold a hearing on appellant's motion for new trial, and overrule his third issue.

In his fourth issue, appellant contends the trial judge erred in failing to grant his motion for new trial. We review the trial court's denial of a motion for new trial under the abuse of discretion standard. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App. 1995). We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable. *Id*. For the same reasons we have concluded the court did not abuse its discretion by denying appellant a hearing on his motion for new trial, we find also the trial court's denial of the motion was not arbitrary or unreasonable. We overrule appellant's fourth issue on appeal and affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.

12